# Illinois Official Reports

## Appellate Court

---

### *Direct Auto Insurance Co. v. Reed*, 2017 IL App (1st) 162263

---

| | |
|---|---|
| Appellate Court Caption | DIRECT AUTO INSURANCE COMPANY, Plaintiff-Appellant, v. ANGELA M. REED, LUCRETIA RAWLES, FELECIA COOKE, JANET GIBSON, MALAKIA WINTERS, and ERIE INSURANCE COMPANY, Defendants (Lucretia Rawles, Felecia Cooke, Janet Gibson, Malakia Winters, and Erie Insurance Company, Defendants-Appellees). |
| District & No. | First District, First Division<br>Docket No. 1-16-2263 |
| Filed | March 27, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 14-CH-11051; the Hon. Peter Flynn, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | James P. Newman & Associates, L.L.C., of Chicago (James P. Newman and William H. Ransom, of counsel), for appellant.<br><br>Urban & Burt, Ltd., of Oak Forest (Joseph A. Korn, of counsel), for appellees. |
| Panel | JUSTICE MIKVA delivered the judgment of the court, with opinion.<br>Presiding Justice Connors and Justice Simon concurred in the judgment and opinion. |

**OPINION**

¶ 1    The plaintiff insurance company in this case sought a declaration that it had no duty to provide coverage in connection with a motor vehicle accident because its insured, the driver of one of the vehicles, breached the cooperation clause in the insurance policy. The insured failed to appear at a mandatory arbitration hearing held in the underlying personal injury and insurance subrogation litigation, resulting in an order debarring her from rejecting an unfavorable arbitration award. At the close of the insurance company's case-in-chief in this coverage dispute, the defendants moved for a judgment in their favor. The circuit court granted their motion, finding that although the company had made a *prima facie* showing that the insured had willfully refused to cooperate, the company had failed to present sufficient evidence to make a *prima facie* case that it suffered substantial prejudice as a result of her breach of the cooperation clause.

¶ 2    For the reasons that follow, we affirm the judgment of the circuit court.

                                    BACKGROUND

¶ 3

¶ 4    A brief discussion of the rules governing mandatory, court-annexed arbitration is needed to provide context for the proceedings in this case. Pursuant to Illinois Supreme Court Rules, certain civil actions are subject to mandatory arbitration before a panel of three arbitrators. Ill. S. Ct. R. 86 (eff. Jan. 1, 1994); R. 87 (eff. Feb. 1, 2007). Following the arbitration hearing, the panel makes an award, disposing of all claims for relief. Ill. S. Ct. R. 92(b) (eff. Jan. 1, 1994). The award is generally not binding; any party present at the arbitration hearing may file a notice of rejection of the award within 30 days and proceed to trial. Ill. S. Ct. R. 93(a) (eff. Jan. 1, 1997). Although a party who is represented at the arbitration hearing by counsel but who does not personally appear does not waive the right to reject the award (*Hinkle v. Womack*, 303 Ill. App. 3d 105, 111 (1999)), the circuit court may still, in its discretion, debar any party from rejecting the arbitrators' award if that party's failure to personally appear at the arbitration constituted a failure, under Rule 91(b), "to participate in good faith and in a meaningful manner" (*Martinez v. Gaimari*, 271 Ill. App. 3d 879, 883 (1995); Ill. S. Ct. R. 91(b) (eff. June 1, 1993)).

¶ 5    On October 31, 2010, defendant Angela Reed, a motorist insured by plaintiff Direct Auto Insurance Company (Direct Auto), was making a left turn when her vehicle collided with another vehicle travelling in the opposite direction. Following the accident, three lawsuits were filed against Ms. Reed by Lucretia Rawles, Felicia Cooke, Janet Gibson, Malakia Winters, and Erie Insurance Company (collectively, claimants) in the circuit court of Cook County (the underlying litigation). Those cases were consolidated and jointly arbitrated on March 18, 2014. Although Ms. Reed was represented by counsel at the arbitration hearing, she did not personally attend. An award was made against her and, at the request of one of the other parties, the circuit court entered an order debarring her from rejecting the award. Although it is unclear from the record before us what the specific basis for the debarring order was, that order is not challenged in this appeal, and the parties do not dispute that it was entered because of Ms. Reed's failure to personally attend the hearing.

¶ 6    On July 2, 2014, Direct Auto filed this action for declaratory judgment (the coverage action), seeking a declaration that it had no duty to provide coverage because Ms. Reed breached the cooperation clause of her policy with Direct Auto, which states:

                                      - 2 -

"6. Assistance and Cooperation of the Insured. The insured shall cooperate with the Company and, upon the Company's request or through attorneys selected by the Company, provide recorded statement(s); an examination under oath; attend hearings and trials; assist in making settlements, securing and giving evidence, obtaining the attendance of witnesses and in the conduct of any legal proceedings in connection with the subject matter of this insurance."

In its complaint, Direct Auto alleged that Ms. Reed was informed of, but failed to attend, the arbitration in the underlying litigation and, as a result, was debarred from rejecting the award entered in her absence. Direct Auto further alleged that it was prejudiced by Ms. Reed's actions because it "was not able to present any defense of [Ms. Reed] at arbitration, nor was [it] able to reject the arbitration award."

¶ 7   A default judgment was ultimately entered against Ms. Reed in the coverage action for her failure to file an amended answer to replace her initial *pro se* answer. The case was then scheduled for trial with the remaining defendants (claimants), and a bench trial began on June 28, 2016. Direct Auto presented the testimony of two witnesses: claims manager Michael Torello and insurance defense attorney Shawn Swope.

¶ 8   According to a bystander's report of the proceedings, Mr. Torello testified that he had been working as a claims manager for Direct Auto for eight years. He stated that Ms. Reed and her husband were insured drivers under a Direct Auto policy requiring their cooperation in the event of an accident or claim, which included their assistance in the defense of a lawsuit. Mr. Torello understood that Ms. Reed had cooperated in the defense of the underlying litigation prior to the arbitration hearing by answering written discovery and by sitting for a deposition. However, Ms. Reed did not attend the arbitration, and judgment was entered against her on the arbitration award.

¶ 9   Mr. Torello testified that the attorney assigned to defend Ms. Reed in the underlying litigation filed a notice of rejection of the arbitration award that was met by a motion to debar rejection. Ms. Reed's response to the motion to debar rejection included affidavits by her and her husband, stating that they had spoken with an employee of Direct Auto named Shirley who told them that Ms. Reed did not need to attend the arbitration. Mr. Torello testified that, although Direct Auto employed an individual named Shirley in its underwriting department, Shirley "would not have contact with insureds regarding lawsuits" and "would not have told [Reed and her husband] that because she d[id] not know." According to Mr. Torello, once matters are assigned to defense counsel, Direct Auto does not communicate directly with its insureds.

¶ 10   Mr. Torello acknowledged that he did not attend the arbitration hearing, did not know what evidence was submitted or what arguments were made at the hearing, and did not know the name of the attorney who represented Ms. Reed at the hearing.

¶ 11   Direct Auto also introduced the evidence deposition of Shawn Swope, the insurance defense attorney it retained to defend Ms. Reed in the underlying litigation. Although he acknowledged that he was not the lawyer who represented her at the arbitration, Mr. Swope identified himself as the person at his office most knowledgeable about the file for Ms. Reed's defense in the underlying litigation. His recollection of the case, upon being shown several documents filed in the underlying litigation, was that it involved "[o]ne driver allegedly making a left turn failing to yield" and "[t]he other driver speeding, driving erratically, [and] failing to yield." He stated that there was "definitely" a liability defense for Ms. Reed to assert

- 3 -

in the underlying litigation. Although Mr. Swope stated that his understanding of the case was consistent with information that Ms. Reed provided his office, he could not recall whether that information was considered before an answer was filed on Ms. Reed's behalf that included affirmative defenses and counterclaims for contributory negligence:

> "Q. *** [Y]ou testified earlier that your office prepared an answer to the complaint; is that correct?
>
> A. I haven't seen it, but I'm sure, yeah.
>
> Q. And Miss Reed would have assisted you in preparing that answer?
>
> A. Probably if I could get ahold [*sic*] of her before I did it. Sometimes if I can't get ahold [*sic*] of them, I look at the pleadings, case notes. It depends on how quickly I have to get stuff on file. *** In this case, I really don't remember one way or the other."

The answer and affirmative defenses themselves are not a part of the record in this case.

¶ 12 Mr. Swope further testified that his office "presumably" would have received interrogatories directed to Ms. Reed in the underlying litigation, prepared draft responses, and then forwarded those on to Ms. Reed to fill in any missing information. When asked if Ms. Reed signed interrogatories and gave a deposition in the underlying litigation, Mr. Swope stated: "I believe so. I have no personal knowledge of that because I don't think I did the dep[osition]." Aside from her failure to attend the arbitration hearing, Mr. Swope testified that he was not aware of any issues regarding Ms. Reed's cooperation with his office, either before or after the hearing.

¶ 13 Mr. Swope testified that when a client's case is scheduled for arbitration, it is his office's standard practice to immediately call the client and send a written notice, followed by a second telephone call as the hearing draws near to confirm that the client will attend. Mr. Swope stated that he did not personally call Ms. Reed but stated that it was "probably" one of his paralegals. He did not know exactly when a letter was sent to Ms. Reed regarding the arbitration hearing but guessed that it was done shortly after the hearing was scheduled. Prior to the arbitration hearing, Mr. Swope had no concerns regarding Ms. Reed's attendance. According to Mr. Swope, Ms. Reed spoke to him after the arbitration hearing and acknowledged that she had received a confirmatory telephone call from his office prior to the hearing.

¶ 14 Mr. Swope stated that Ms. Reed was represented at the arbitration hearing by a former associate from Mr. Swope's office whose name he could not recall. Mr. Swope did not attend the hearing and had no firsthand knowledge of what testimony was provided or whether any other witnesses besides Ms. Reed could have provided testimony in Ms. Reed's defense. As far as he knew, no subpoenas for third-party witnesses were issued by his office. It was nevertheless Mr. Swope's belief that Ms. Reed's absence affected his office's ability to defend her in the underlying litigation:

> "Q. Okay. And in this case would it be fair to assume that in order to defend Angela Reed at that arbitration you would have had to have her attendance and appearance?
>
> A. That's true. Yes."

Mr. Swope further suggested that Ms. Reed's absence at the arbitration hearing also could have affected his office's ability to challenge the damages asserted by the claimants in the underlying litigation:

> "[Q.] *** Now, Miss Reed's failure to appear at the arbitration that would in no way have prevented your attorney who was there from contesting damages, correct?

A. Not exactly correct, no. You still have to contest the damages, but your client can offer stuff like admissions made by a party opponent, how they acted at the scene, whether they had any visible injuries, sorts of stuff like that which does go to injury."

¶ 15 Mr. Swope testified that his office filed a response on behalf of Ms. Reed to the motion to debar her from rejecting the arbitration award. Attached to the response were affidavits signed by Ms. Reed and her husband that Mr. Swope prepared following a conversation he had with them after the arbitration hearing. In her affidavit, Ms. Reed explained that, after receiving calls and a letter from her attorneys telling her to appear at the arbitration, she and her husband called Direct Auto—as they did any time they received mail or notices relating to the accident—to confirm what they should do. According to Ms. Reed, on March 5, 2014, her husband spoke to someone named "Shirley" who told him that Ms. Reed did not have to attend the arbitration hearing. Ms. Reed stated in the affidavit: "Otherwise, I would have been there and testified and cooperated, and I would have told my side of the story."

¶ 16 Following Direct Auto's case-in-chief, defendants filed a motion for a judgment in their favor pursuant to section 2-1110 of the Code of Civil Procedure (Code) (735 ILCS 5/2-1110 (West 2014)). According to the bystander's report of the court's oral ruling on the motion, the court initially found that Direct Auto had made a *prima facie* showing that Ms. Reed had willfully refused to cooperate, "but had failed to show that it was substantially prejudiced in defense of the arbitration hearing." The bystander report states: "In making this determination the Court indicated, in its view, Mr. Torello's testimony contributed nothing to the issues to be determined."

¶ 17 The circuit court then "analyzed further," concluding first that "Direct [Auto] was substantially prejudiced by the debarring order, which occurred solely because of [Ms.] Reed's failure to appear at the arbitration," and denying defendants' motion. When trial resumed the next day, on June 29, 2016, defendants asked the circuit court to reconsider its finding that Direct Auto was prejudiced in light of this court's opinion in *United Automobile Insurance Co. v. Buckley*, 2011 IL App (1st) 103666. The circuit court reviewed *Buckley*, agreed to reconsider its ruling, and granted the defendants' motion, concluding that "based on its reading of *Buckley*, substantial prejudice could not be shown simply by the entry of a debarring order in the underlying case."

¶ 18 The circuit court entered judgment in defendants' favor on June 29, 2016, stating in its written order that, "consistent with [*Buckley*], plaintiff failed to show substantial prejudice." Direct Auto filed a motion to vacate the judgment, which the circuit court denied on July 20, 2016.

¶ 19 JURISDICTION

¶ 20 Defendants timely filed their notice of appeal in this matter on August 16, 2016. We therefore have jurisdiction pursuant to Illinois Supreme Court Rules 301 and 303 governing appeals from final judgments entered below. Ill. S. Ct. R. 301 (eff. Feb. 1, 1994); R. 303 (eff. Jan. 1, 2015).

¶ 21 ANALYSIS

¶ 22 On appeal, Direct Auto argues that the circuit court erred in finding that it had not demonstrated substantial prejudice through Mr. Swope's evidence deposition and that it

- 5 -

misapplied *Buckley* and improperly granted defendants' motion for judgment in their favor pursuant to section 2-1110 of the Code (735 ILCS 5/2-1110 (West 2014)). Direct Auto insists that it was substantially prejudiced by Ms. Reed's failure to attend the arbitration in the underlying litigation because it was hampered in putting on its defense and the resulting debarring order prevented Direct Auto from rejecting the arbitration award. In their joint response brief, the claimants argue that the circuit court did not err in applying *Buckley* or in granting defendants' motion because Direct Auto failed to present sufficient evidence supporting a finding that it was substantially prejudiced by Ms. Reed's failure to attend the arbitration hearing.

¶ 23    Section 2-1110 of the Code provides that a defendant in a non-jury case may, at the close of the plaintiff's case-in-chief, move for a judgment in the defendant's favor. *Id.* In ruling on such a motion, the circuit court engages in a two-prong analysis. *People ex rel. Sherman v. Cryns*, 203 Ill. 2d 264, 275 (2003). "First, the court must determine, as a matter of law, whether the plaintiff has presented a *prima facie* case," which the plaintiff establishes by "proffering at least some evidence on every element essential to [the plaintiff's underlying] cause of action." (Internal quotation marks omitted.) *Id.* If the plaintiff fails to meet this burden the motion should be granted and our review of that ruling is *de novo*. *Id.*

¶ 24    If, however, the court determines that the plaintiff has presented a *prima facie* case, it proceeds to the second prong of the inquiry. "In its role as the finder of fact," the circuit court then weighs the evidence, assesses the credibility of witnesses, and determines what reasonable inferences may be drawn from the evidence as a whole. *Id.* at 275-76. As our supreme court has noted, "[t]his weighing process may result in the negation of some of the evidence necessary to the plaintiff's *prima facie* case, in which event the court should grant the defendant's motion and enter judgment in his favor." *Kokinis v. Kotrich*, 81 Ill. 2d 151, 155 (1980). If "sufficient evidence necessary to establish the plaintiff's *prima facie* case remains following the weighing process, the court should deny the defendant's motion and proceed as if the motion had not been made." *Id.* We will only reverse a circuit court's ruling following this second-prong weighing process if it is against the manifest weight of the evidence. *Cryns*, 203 Ill. 2d at 276. "A judgment is against the manifest weight of the evidence when an opposite conclusion is apparent, or when the findings appear to be unreasonable, arbitrary or not based upon the evidence." *Rhodes v. Illinois Central Gulf R.R.*, 172 Ill. 2d 213, 242 (1996).

¶ 25    The assistance and cooperation clause of an automobile insurance policy is designed to prevent collusion between the injured party and the insured. *M.F.A. Mutual Insurance Co. v. Cheek*, 66 Ill. 2d 492, 496 (1977). "While an insured has no duty to assist an insurer in any effort to defeat a proper claim for recovery," pursuant to such provisions the insured must typically "disclose all facts within his knowledge and otherwise help the insurer determine coverage under the policy." *Founders Insurance Co. v. Shaikh*, 405 Ill. App. 3d 367, 374 (2010). Where, as here, an insurer has sought a declaration of no coverage based on the insured's failure to cooperate, a *prima facie* case consists of two elements: a breach by the insured (*i.e.*, a showing that the insurer "exercised a reasonable degree of diligence in seeking the insured's participation" and "the insured's absence was due to a refusal to cooperate") and resulting substantial prejudice to the insurer. *Id.*

¶ 26    In *Cheek*, our supreme court explained the policy considerations underlying the latter requirement. *Cheek*, 66 Ill. 2d at 500. Because automobile insurance policies are more than just private agreements between the parties who enter into them, but inure to the benefit of innocent

third parties and the public in general, they should be construed to "afford to affected members of the public *** the maximum protection possible consonant with fairness to the insurer.' " *Id.* at 501. Accordingly, there is no presumption of prejudice when an insurer attempts to invoke a policy's cooperation clause. *Id.* at 500. To avoid its responsibilities under the policy, an insurer must demonstrate that it was "substantially prejudice[d]," *i.e.*, that it was "actually hampered in its defense by the violation of the cooperation clause." *Id.* at 499-500.

¶ 27 In this case, the circuit court's ruling that Direct Auto established a *prima facie* case that Ms. Reed breached the cooperation clause of her policy is not challenged on appeal. The only issue for our consideration is whether Direct Auto presented sufficient evidence of substantial prejudice flowing from that breach to avoid a judgment in defendants' favor.

¶ 28                                                A. Standard of Review

¶ 29 We initially address the parties' disagreement regarding the applicable standard of review on appeal. Direct Auto contends that we should review the circuit court's ruling *de novo* because, in finding that Direct Auto had not shown prejudice from Ms. Reed's failure to cooperate, the court never progressed beyond the first prong of its analysis under section 2-1110 of the Code—the purely legal question of whether at least some evidence was presented with respect to each element of Direct Auto's claim. Claimants argue that a manifest weight standard is instead required because the circuit court did find that Direct Auto presented some evidence of prejudice, just not enough to meet its burden. Both parties are partially correct.

¶ 30 The circuit court ruled on the element of prejudice three times. It first concluded that Direct Auto "failed to show it was substantially prejudiced in defense of the arbitration hearing." It appears from the bystander's report that the court considered the testimony presented on this issue. This evidence included the live testimony of Mr. Torello and also the evidence deposition of Mr. Swope. The bystander's report does not include any statement by the circuit court other than that the court found that Direct Auto "had failed to show it was substantially prejudiced in its defense of the arbitration hearing," and that "[i]n making this determination, the Court indicated, in its view, Mr. Torello's testimony contributed nothing to the issues to be determined." In context, it is clear that this first ruling by the circuit, was based on a weighing of Direct Auto's evidence and a finding by the court that the evidence was insufficient to sustain Direct Auto's burden. Because this was a weighing of evidence by the circuit court, we will only reverse the court's ruling if it was against the manifest weight of the evidence. *Cryns*, 203 Ill. 2d at 276.

¶ 31 The court then reconsidered its ruling twice, first determining that Direct Auto was prejudiced by the debarring order itself and then, based on its reading of *Buckley*, that "substantial prejudice could *not* be shown simply by the entry of a debarring order in the underlying case." (Emphasis added.) These second two rulings were both based on conclusions of law, and the last ruling effectively cancelled out the previous one. On appeal, we are left with the legal issue of whether the debarring order itself was sufficient to show substantial prejudice. On this legal issue, our review is *de novo*.

¶ 32 Reversal of the circuit court order would be proper if Direct Auto made a sufficient showing of substantial prejudice, either by the impact of Ms. Reed's absence at the arbitration itself or by virtue of the debarring order. Accordingly, we will consider the legal issue of whether the entry of a debarring order is sufficient to establish substantial prejudice and, if it is

not, whether the circuit court's finding that Direct Auto failed to present other sufficient evidence establishing that it was substantially prejudiced by Ms. Reed's failure to attend the arbitration hearing was against the manifest weight of the evidence.

¶ 33                                    B. Effect of the Debarring Order

¶ 34    Direct Auto's primary argument on appeal is that the issuance of a debarring order, resulting from an insured's failure to attend an arbitration hearing, establishes substantial prejudice to an insurer as a matter of law and the circuit court inappropriately construed this court's decision in *United Automobile Insurance Co. v. Buckley*, 2011 IL App (1st) 103666, as holding otherwise. In *Buckley*, as in this case, the insured was involved in an automobile collision that resulted in civil litigation; an arbitration hearing was held, which the insured did not attend, and resulted in an award in the injured party's favor; the insured was debarred from rejecting the arbitrators' award; and the insurer sought a declaration that it had no duty to provide coverage because the insured breached the assistance and cooperation provision of the policy by failing to attend the arbitration. *Id.* ¶ 1. At the same time, the injured party brought garnishment proceedings against the insurer and the cases were consolidated.

¶ 35    The insured in *Buckley*, who had otherwise cooperated with the insurer, claimed that his failure to attend was inadvertent and that he believed the arbitration was on a different day. *Id.* ¶ 18. The coverage dispute proceeded to a bench trial and the circuit court rejected the insurer's arguments against coverage. *Id.* ¶ 22. On appeal, the insurer argued that it was prejudiced by the insured's failure to appear at the arbitration hearing because it was deprived of the insured's testimony regarding what he saw or experienced at the time of the collision. *Id.* ¶ 53. We rejected that argument, concluding that the insurer failed to show that "it was dependent upon [the insured] for full and complete disclosure of the facts or preparation of the defense to [the underlying] personal injury suit." *Id.*

¶ 36    The *Buckley* court was not called on to consider whether a debarring order, on its own, establishes substantial prejudice to an insurer as a matter of law. In fact, the court's consideration of the debarring order in that case was limited to its rejection of an argument made by the insurer that the injured party who sought and obtained the debarring order because of the insured's failure to attend the arbitration hearing was estopped from later arguing that the insured's absence was not a breach of the policy's cooperation clause. The conclusion implicit in the *Buckley* court's analysis, however, is that a debarring order alone does *not* cause an insurer substantial prejudice. If the opposite were true, the court would have had no reason to consider, as it did at length, whether there was evidence of actual prejudice resulting from the insured's failure to attend the arbitration hearing. Accordingly, the circuit court in this case did not necessarily misinterpret *Buckley* when, following its review of that case, it ultimately rejected Direct Auto's argument in favor of a rule presuming the insurer is prejudiced whenever a debarring order is entered because an insured did not appear at the arbitration.

¶ 37    We now expressly hold, as the *Buckley* court seems to have implicitly concluded, that substantial prejudice to an insurer does not automatically flow from the issuance of a debarring order preventing the insured from rejecting an unfavorable arbitration award. A rule to the contrary would not comport with the important policy considerations—stressed by our supreme court—that require an insurer to demonstrate *actual*, substantial prejudice from an insured's breach of a cooperation clause. See *Cheek*, 66 Ill. 2d at 499-500. This is by design a significant burden. Prejudice is more than a mere inconvenience but a "[d]amage or detriment

to one's legal rights." Black's Law Dictionary (10th ed. 2014). And *some* prejudice is not the same as substantial prejudice. Direct Auto has cited no authority for the proposition that prejudice from a debarring order may be presumed, and we decline to create a rule that would relieve insurers of the burden our supreme court saw fit to impose on them whenever they seek to rely on an insured's breach of a policy's cooperation clause as a defense to coverage.

¶ 38  In so holding, we do not foreclose the possibility that an insurer might, under the circumstances of a particular case, be able to demonstrate actual, substantial prejudice from the issuance of a debarring order itself. But such a showing must be based on evidence that the insured would have obtained a better result at the trial than the insured obtained at arbitration. Direct Auto offered no evidence in support of such a showing in this case and the law in Illinois is clear that actual prejudice will not be presumed from circumstances that merely create the potential for prejudice. See, *e.g.*, *American Access Casualty Co. v. Alassouli*, 2015 IL App (1st) 141413, ¶¶ 22, 41-42 (holding insurer failed to prove substantial prejudice where insured refused to return any of the insurer's calls but where the insurer also "failed to present any evidence *** suggest[ing] that [the insured] was not involved in the accident or that he was not liable").[1]

¶ 39                    C. Substantial Prejudice From Ms. Reed's Absence at Arbitration

¶ 40  We move on to consider whether the circuit court's ruling that Direct Auto failed to present sufficient evidence of substantial prejudice stemming from Ms. Reed's failure to attend the arbitration hearing was against the manifest weight of the evidence. In doing so, we "will not substitute [our] judgment for that of the trial court on such matters as witness credibility, the weight to be given evidence, and the inferences to be drawn from the evidence." *In re An. W.*, 2014 IL App (3d) 130526, ¶ 55. Rather, "deference is given to the trial court as finder of fact because the trial court is in the best position to observe the conduct and demeanor of the parties and the witnesses and has a degree of familiarity with the evidence that a reviewing court cannot possibly obtain." *Id.*

¶ 41  Direct Auto argues that its ability to mount a liability defense in this case was hampered by Ms. Reed's absence because without her "there was no way to contradict the other driver's version of the accident." Direct Auto presented no testimony from anyone who attended the arbitration. Claimants argue that Mr. Swope, as a lawyer who was not present at the arbitration hearing, could *never* testify competently regarding how an insured's absence impacted that proceeding. We need not decide whether that is so. It is sufficient to note that Mr. Swope's evidence deposition revealed nothing about what testimony was expected from Ms. Reed at the arbitration hearing or how the absence of that testimony affected her defense in anything but a theoretical way. Mr. Swope had little to no contact with Ms. Reed prior to the arbitration hearing and could not remember if he even consulted with her before purportedly filing affirmative defenses and counterclaims based on the assertion that the other vehicle involved in the accident was "speeding and driving erratically." On this record, the circuit court's

---

[1]Before moving on from this issue, we find it necessary to remind claimants that their extensive discussion of one of this court's unpublished orders issued pursuant to Illinois Supreme Court Rule 23 (eff. July 1, 2011) is improper. Rule 23(e) unambiguously provides that such orders "may not be cited by any party except to support contentions of double jeopardy, *res judicata*, collateral estoppel or law of the case." Ill. S. Ct. R. 23(e) (eff. July 1, 2011).

finding that Direct Auto failed to establish substantial prejudice from Ms. Reed's absence at the arbitration hearing was not "unreasonable, arbitrary or not based upon the evidence" and the opposite conclusion is not apparent. *Rhodes*, 172 Ill. 2d at 242.

¶ 42    Mr. Swope also opined that Ms. Reed's absence hampered Direct Auto's ability to contest damages in the case because a "client can offer stuff like admissions made by a party opponent, how they acted at the scene, whether they had any visible injuries, sorts of stuff like that which does go to injury." But again, Mr. Swope spoke in generalities and not specifics. His testimony did not establish that *this* client would have provided such testimony in *this* case. Indeed, just as in *Buckley,* Ms. Reed's absence from the arbitration hearing did not in any way prevent her attorney from reviewing the injured parties' medical records or challenging their claimed damages through cross-examination. See *Buckley*, 2011 IL App (1st) 103666, ¶ 53. Thus, even considering claims of liability and the assessment of damages separately, we cannot say that the circuit court's finding that Direct Auto failed to show it was hampered in its defense by Ms. Reed's absence was against the manifest weight of the evidence.

¶ 43    At argument, Direct Auto emphasized that, unlike in *Buckley*, the pleadings in this case demonstrate that whether Ms. Reed was liable was "always an open question." That may be so, but it cannot be presumed from this that Ms. Reed's presence at the arbitration hearing was necessary to Direct Auto's defense of the claims against her. Indeed, although we do not rely on it as a basis for our holding, we also note that the transcript of Ms. Reed's discovery deposition, which was attached as an exhibit to Mr. Swope's evidence deposition, suggests that Ms. Reed would likely not have offered helpful testimony at the arbitration hearing. Although Ms. Reed testified at her deposition that, halfway through her left turn, she realized that the car coming at her from the other direction was traveling faster than she thought, she never testified that it was exceeding the speed limit or driving erratically. Ms. Reed also testified that, after the accident, when police and paramedics were on the scene, she did not hear anything that was said to the passengers of her own car, did not know if there were passengers in the other car, did not know if the other driver received a ticket, and did not see if the other driver appeared impaired. Counsel for Direct Auto preserved an objection to the use of Ms. Reed's deposition as hearsay, but there is no indication in the record that it obtained a ruling on that objection. In any event, we mention it here only because it demonstrates why the helpfulness of an insured's testimony to the insurer's defense cannot be presumed.

¶ 44    Direct Auto spends significant time arguing that this case is different than *Buckley* because the insured in that case never filed an answer denying the allegations in the underlying litigation and indeed admitted that he was at fault for the collision. *Id.* Thus, we concluded in that case that the insured's absence at the arbitration hearing could not have prejudiced the insurer with respect to a finding of liability. *Id.* We agree with Direct Auto that the showing of prejudice is fact-specific and that evidence of the sort presented in *Buckley*—indicating that the insurer *could not possibly* have been prejudiced by the insured's failure to attend the arbitration hearing—is not present in this case. However, the same result is warranted here as in *Buckley*. The burden was on Direct Auto to present sufficient evidence at trial, demonstrating that it was actually, substantially prejudiced by Ms. Reed's absence. Direct Auto offered only speculative, nonspecific testimony from people who were not present at the hearing. For the reasons stated above, we cannot say that the circuit court's determination that Direct Auto failed to meet that burden was against the manifest weight of the evidence.

¶ 45                                    CONCLUSION

¶ 46        For the foregoing reasons, we hold that (1) the circuit court did not err in ruling that a debarring order on its own does not, as a matter of law, establish the substantial prejudice that an insurer must demonstrate to obtain a declaration of no coverage based on an insured's breach of a policy's cooperation clause and (2) the court's ruling that Direct Auto failed to present sufficient evidence necessary to establish its a *prima facie* case that it was substantially prejudiced by Ms. Reed's failure to attend the arbitration hearing in the underlying litigation was not against the manifest weight of the evidence.

¶ 47        Affirmed.