2021 IL App (1st) 210600

No. 1-21-0600

Third Division
December 22, 2021

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

_____

|  |  |  |
|---|---|---|
| COUNTRY MUTUAL INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | Appeal from the Circuit Court |
| | ) | of Cook County. |
| v. | ) | |
| | ) | No. 20 CH 03915 |
| UNDER CONSTRUCTION AND REMODELING, | ) | |
| INC., and KAZIMIERZ SZYMANSKI, | ) | The Honorable |
| | ) | David B. Atkins, |
| Defendants | ) | Judge Presiding. |
| | ) | |
| (Kazimierz Szymanski, | ) | |
| Defendant-Appellant). | ) | |
| | ) | |

_____

PRESIDING JUSTICE GORDON delivered the judgment of the court, with opinion.
Justices McBride and Burke concurred in the judgment and opinion.

**OPINION**

¶ 1    Defendant Kazimierz Szymanski[1] was allegedly injured while working for his employer,

defendant Under Construction and Remodeling, Inc. (Under Construction), and filed a

workers' compensation claim. Plaintiff Country Mutual Insurance Company, which had issued

_____

[1] We note that Szymanski refers to himself as a third-party defendant in his brief on appeal. However, Szymanski was not a third-party defendant but was named as a defendant in plaintiff's declaratory judgment complaint, as injured claimants have been held to be necessary parties to such a suit. See *M.F.A. Mutual Insurance Co. v. Cheek*, 66 Ill. 2d 492, 495 (1977); *Williams v. Madison County Mutual Automobile Insurance Co.*, 40 Ill. 2d 404, 407 (1968).

a workers' compensation insurance policy to Under Construction, sought to investigate Szymanski's claim and contacted Under Construction for information. When Under Construction failed to respond after repeated attempts to reach it, plaintiff filed a complaint for declaratory judgment in the circuit court of Cook County, alleging that plaintiff owed no duty to defend or indemnify Under Construction because Under Construction had breached the insurance policy's cooperation clause. Under Construction did not file an appearance in the lawsuit, and the court entered a default judgment against it. Plaintiff then moved for summary judgment, which was granted on the basis of Under Construction's breach of the cooperation clause. Szymanski appeals and, for the reasons set forth below, we reverse and remand.

¶ 2                                                      BACKGROUND

¶ 3         The facts underlying the instant appeal are taken from plaintiff's complaint and the exhibits attached thereto, as well as plaintiff's motion for summary judgment. Since the issue on appeal turns on the adequacy of plaintiff's attempts to contact Under Construction, we relate the facts concerning that issue in some detail.

¶ 4         On June 28, 2016, Under Construction submitted an application for a workers' compensation insurance policy with plaintiff, using an insurance agent named Kathy Spiewak. According to the application, Under Construction had been in business since 2010 and was in the business of "siding installation—all types—residential dwelling." The application also provided that Under Construction had three full-time employees and listed a mailing address on Clark Lane in Des Plaines. The owner of the business was listed as Jan Kaznecki, and the application included Kaznecki's phone number and e-mail address.

¶ 5         The insurance policy at issue on appeal was a renewal policy with a policy period from May 17, 2019, through May 17, 2020; as with the application, the renewal policy was issued

using Spiewak as the insurance agent. The policy listed an address on Lincoln Avenue in Chicago as the business address, and Kaznecki was listed as the owner. Part four of the policy discussed "Your Duties if Injury Occurs" and provided, in full:

"Tell us at once if injury occurs that may be covered by this policy. Your other duties are listed here.

1. Provide for immediate medical and other services required by the workers compensation law.

2. Give us or our agent the names and addresses of the injured persons and of witnesses, and other information we may need.

3. Promptly give us all notices, demands and legal papers related to the injury, claim, proceeding or suit.

4. Cooperate with us and assist us, as we may request, in the investigation, settlement or defense of any claim, proceeding or suit.

5. Do nothing after an injury occurs that would interfere with our right to recover from others.

6. Do not voluntarily make payments, assume obligations or incur expenses, except at your own cost."

The insurance policy did not contain a schedule or list of employees, other than listing Kaznecki as an "Excluded Owner, LLC member or Executive Officer" in an endorsement.

¶ 6        On November 20, 2019, Szymanski filed an application for adjustment of claim with the Illinois Workers' Compensation Commission. Szymanski alleged that he injured his left shoulder on July 2, 2019, while working for Under Construction, and had orally notified his

employer of the accident. Szymanski listed the Lincoln Avenue address as Under Construction's address.

¶ 7        Plaintiff commissioned an "audit" of Under Construction, covering the period of June 1, 2018, through June 1, 2019, which it received on December 7, 2019; plaintiff refers to this audit as a "Premium Audit" in its brief on appeal, and does not claim that this audit had any connection with Szymanski's claim. The audit listed an address on Lincoln Avenue in Chicago as the business address, and continued to list Kaznecki as the owner. The contact details for the business provided "John Kaznecki"[2] as the contact, at the same phone number as provided in the initial application, but with a different e-mail address. Payroll lists on the audit named a total of four individuals: Jan Kaznecki and three individuals identified as installers; Szymanski is not included on these payroll lists.

¶ 8        As explained in further detail below, between January 3, 2020, and April 17, 2020, plaintiff attempted to contact Under Construction in connection with Szymanski's claim on nine occasions, without success.

¶ 9        On April 20, 2020, plaintiff filed a complaint for declaratory judgment against defendants, seeking a finding that it owed no duty to defend or indemnify Under Construction in connection with Szymanski's workers' compensation claim. In count I of its complaint, plaintiff alleged that Szymanski was not an employee of Under Construction on the date of his alleged accident, so plaintiff's insurance policy did not apply. In count II of its complaint, plaintiff alleged that Under Construction had failed to cooperate with plaintiff's investigation, so plaintiff had no

---

[2] It is not clear if this is a phonetic spelling of "Jan Kaznecki" or a different individual. However, no one by the name "John Kaznecki" appears on the audit's list of employees.

obligation to defend or indemnify Under Construction in connection with Szymanski's workers' compensation claim.

¶ 10     Due to the COVID-19 pandemic, the sheriff's office declined to serve defendants, and a special process server was appointed to serve them. Szymanski was personally served on August 3, 2020, and filed an appearance and answer on August 14, 2020. With respect to Under Construction, the address for Under Construction on the initial summons and on an alias summons was the Lincoln Avenue address. However, a second alias summons listed an address on Oxford Avenue in Chicago and provided the name of Chester Grochowski as Under Construction's registered agent.[3] The affidavit of the special process server indicated that Under Construction was served at the Oxford Avenue address on September 24, 2020, and that a copy of the summons and complaint were personally served on Grochowski.

¶ 11     On November 6, 2020, plaintiff filed a motion for default judgment against Under Construction, which had failed to file an appearance or answer. On November 16, 2020, the trial court granted plaintiff's motion, further finding that Under Construction would be bound by any decision by the court as to the issues raised in the complaint.[4]

¶ 12     On January 5, 2021, plaintiff filed a motion for summary judgment. The sole argument raised in the motion for summary judgment was that Under Construction had breached the cooperation clause of the insurance policy and, therefore, plaintiff was not obligated to defend

---

[3] According to the corporate file detail report available on the Secretary of State's website, Grochowski has been the registered agent of Under Construction since April 2015. See *Maldonado v. Creative Woodworking Concepts, Inc.*, 296 Ill. App. 3d 935, 938 (1998) ("records from the Illinois Secretary of State's Office *** are public records that this court may take judicial notice of").

[4] The corporate file detail report available on the Secretary of State's website indicates that Under Construction was involuntarily dissolved on November 10, 2020. Neither party claims that this dissolution has any effect on the issue of whether Under Construction had violated the cooperation clause as of the date of the filing of the complaint.

or indemnify it for any claims arising from Szymanski's alleged injury.[5] Plaintiff claimed that it had exercised a reasonable degree of diligence in seeking Under Construction's cooperation, making "numerous" phone calls and sending "repeated" letters in an effort to discuss Szymanski's claim with Under Construction, beginning in January 2020. In June 2020, plaintiff's "Special Investigation Unit" attempted to contact Under Construction through e-mails and phone calls, but was unsuccessful. In July 2020, a representative from the special investigation unit physically visited the address that was listed with the Secretary of State's office in an attempt to make contact, but was able only to leave a business card and letter.[6] Plaintiff claimed that Under Construction's silence "constitute[d] a willful refusal to cooperate." Plaintiff further claimed that it was "greatly prejudiced" in its ability to obtain all necessary facts to defend the claim. Accordingly, plaintiff claimed that the breach of the insurance policy's cooperation clause meant that plaintiff had no duty to defend or indemnify Under Construction with respect to Szymanski's claim as a matter of law.

¶ 13    Attached to the motion for summary judgment was the affidavit of Jennifer Shepherd, a claims representative with plaintiff, who was assigned to handle Szymanski's claim. In her affidavit, Shepherd averred that, through its investigation, plaintiff had attempted to contact Under Construction in the following ways: (1) "January 3, 2020: Telephone call unanswered, voicemail full"; (2) "January 7, 2020: Telephone call unanswered, voicemail full"; (3) "January 8, 2020: Contact letter sent to insured. No response received"; (4) "January 20, 2020:

---

[5] Indeed, in its reply in support of the motion for summary judgment, plaintiff made clear that Szymanski's employment status at the time of his accident was "immaterial[ ] to Plaintiff's argument based on UNDER CONSTRUCTION's non-cooperation. Non-cooperation alone is a sufficient basis to deny coverage for Szymanski's claim, as it unambiguously breaches the terms of the Policy."

[6] The motion does not specify which address was visited; the corporate file detail report available on the Secretary of State's website lists both the Lincoln Avenue address and the Oxford Avenue address of the registered agent.

Telephone call unanswered, voicemail full; Contact letter sent to insured. No response received"; (5) "February 27, 2020: Telephone call unanswered, voicemail full"; (6) "March 12, 2020: Cooperation letter sent to insured. No response received"; (7) "April 2, 2020: Letter sent to insured requesting payroll records. No response received"; (8) "April 10, 2020: Telephone call unanswered, voicemail full"; (9) "April 17, 2020: Reservation of rights letter sent to insured. No response received"; (10) "June 29, 2020: Special Investigation Unit email to insured. No response received"; (11) "July 2, 2020: Special Investigation Unit telephone call unanswered. Voicemail full"; (12) "July 6, 2020: Special Investigation Unit telephone call unanswered. Voicemail full"; (13) "July 7, 2020: Special Investigation Unit in-person contact attempt at insured's address. No answer at the door, business card and letter left at address. No response"; and (14) "July 9, 2020: Special Investigation Unit in-person contact attempt at insured's address. No response." Shepherd's affidavit did not indicate the phone number that was called or the address that was visited, nor did it indicate the time of day that these calls or visits occurred. However, attached to her affidavit were several of the letters referenced in the affidavit, which we relate in detail. We note that only one of these letters—the reservation of rights letter—indicates that it was sent by certified mail, and Shepherd's affidavit does not include details as to whether any of the letters were returned as undelivered or whether anyone signed for the certified letter.

¶ 14    A January 8, 2020, letter from Shepherd to Under Construction was sent to the Lincoln Avenue address and provided, in full:

"Dear—Under Construction and Remodeling:

COUNTRY Mutual Insurance Company, Bloomington, IL provides your Workers' Compensation. We have recently been informed of your employee's injury.

7

Please contact me at the number listed below at your earliest convenience to discuss this claim."

¶ 15    A January 20, 2020, letter from Shepherd to Under Construction was sent to the Lincoln Avenue address and provided, in full:

"Dear—Under Construction and Remodeling:

Your above named employee has filed an Application for Adjustment of Claim with the Illinois Workers' Compensation Commission in regard to the alleged injuries received on the date mentioned above.

The matter is receiving our attention and you need not appear at any hearing unless you are contacted by one of our representatives or by someone from our attorney's office. If you have any questions regarding this matter, please do not hesitate to contact me direct[ly].

If in the future you receive any additional correspondence regarding this matter, please forward to the undersigned immediately."

On the same day, Shepherd also sent another letter to Under Construction at the Lincoln Avenue address, which was identical to the January 8 letter, except that the words "SECOND REQUEST" appeared at the top of the letter.

¶ 16    A March 12, 2020, letter from Shepherd to Under Construction was sent to the Lincoln Avenue address. After quoting part four of the insurance policy, which concerned Under Construction's duties in the event of an injury, the letter provided:

"We have repeatedly called and written your office in an attempt to obtain the necessary information required in order to provide the injured employee with benefits that may be owed. You have ignored our requests.

8

Your actions may have prejudiced the rights of COUNTRY Mutual under the policy to settle and/or defend this claim. To the extent that you claim any rights under Policy # AW9225221 in connection to this matter, in order to preserve any such claimed right, *you must cooperate with COUNTRY Mutual in all actions it undertakes on your behalf now and in the future*. Failure to cooperate is a breach of your insurance contact, which could excuse COUNTRY Mutual from any obligation to continue providing coverage applicable under the policy.

Under the Workers' Compensation Act of the State of Illinois the employer is responsible for all benefits owed the employee under the Act. Should COUNTRY Mutual be excused by the court from any obligation under Policy # AW9225221, Under Construction And Remodeling Inc may be held responsible for all benefits owed the injured employee under the Act.

Your cooperation is required *immediately* in contacting me at the number listed below so I may complete my investigation of the claim.

Continued cooperation will be required throughout the duration of this claim." (Emphases in original.)

¶ 17    An April 2, 2020, letter from Shepherd to Under Construction was sent to the Lincoln Avenue address and requested that Under Construction complete an enclosed payroll record on Szymanski. An April 17, 2020, reservation of rights letter from Shepherd to Under Construction was sent to the Lincoln Avenue address via both regular mail and certified mail and provided that plaintiff was defending Under Construction with respect to Szymanski's claim but that its position was that it owed Under Construction no duty to defend or indemnify it because Under Construction made material misrepresentations in its application for

9

insurance and because Under Construction had failed to cooperate with plaintiff's investigation. A copy of this reservation of rights letter was sent to Spiewak, the insurance agent who had issued the policy.

¶ 18   Finally, a June 29, 2020, e-mail from Tim Bates, identified as a representative from plaintiff's special investigations unit to Kaznecki, the owner of Under Construction, was sent to the e-mail address listed in the insurance audit and provided, in full:

> "Mr. Kaznecki,
>
> We have been trying to contact you to discuss the facts & circumstances regarding the claim noted above. It is important that we speak to you about the incident as it is relevant to our investigation. Upon receipt of this correspondence, please contact me to discuss. I look forward to hearing from you."

We note that this e-mail was sent only to the address included in the insurance audit and not to the address listed on the original insurance application.

¶ 19   In response to plaintiff's motion for summary judgment, Szymanski claimed that he was covered under the insurance policy and that any lack of cooperation by Under Construction did not breach the insurance policy. With respect to the cooperation clause, Szymanski argued that plaintiff failed to establish how it was prejudiced by Under Construction's alleged failure to cooperate, and further argued that plaintiff had not displayed a reasonable degree of due diligence in seeking Under Construction's participation. Szymanski claimed that there could have been a number of reasons for Under Construction's silence, and that its failure to respond to the letters and phone calls did not necessarily mean that it was willfully noncooperative.

¶ 20   On May 4, 2021, the trial court entered an order granting plaintiff's motion for summary judgment. The court found that it was undisputed that Under Construction had not participated

at all in the claim or in the resulting litigation, "despite Plaintiff attempting no less than 15 times over several months to contact it, including phone calls, letters, and even a special investigator sent to its registered address and that of its president individually." The court found that there was no basis for requiring any further efforts, and that Szymanski's "speculative arguments about what might have been done" were unpersuasive, especially given that Szymanski supplied no affidavit or other evidence in response to the motion for summary judgment. Accordingly, the court found that plaintiff had no duty to defend or indemnify Under Construction in connection with Szymanski's alleged injury and entered judgment in plaintiff's favor.

¶ 21    Szymanski filed a timely notice of appeal, and this appeal follows.

¶ 22                                         ANALYSIS

¶ 23    On appeal, the sole question we are asked to consider is whether the trial court erred in granting summary judgment in plaintiff's favor due to Under Construction's breach of the insurance policy's cooperation clause. A trial court is permitted to grant summary judgment only "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2018). The trial court must view these documents and exhibits in the light most favorable to the nonmoving party. *Home Insurance Co. v. Cincinnati Insurance Co.*, 213 Ill. 2d 307, 315 (2004). We review a trial court's decision to grant a motion for summary judgment *de novo*. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102 (1992). *De novo* consideration means we perform the same analysis that a trial judge would perform. *XL Specialty Insurance Co. v. Performance Aircraft Leasing, Inc.*, 2019 IL App (1st) 181031, ¶ 62. " 'The construction of an

insurance policy and a determination of the rights and obligations thereunder are questions of law for the court which are appropriate subjects for disposition by way of summary judgment.' " *Steadfast Insurance Co. v. Caremark Rx, Inc.*, 359 Ill. App. 3d 749, 755 (2005) (quoting *Crum & Forster Managers Corp. v. Resolution Trust Corp.*, 156 Ill. 2d 384, 391 (1993)).

¶ 24    "Summary judgment is a drastic measure and should only be granted if the movant's right to judgment is clear and free from doubt." *Outboard Marine Corp.*, 154 Ill. 2d at 102. However, "[m]ere speculation, conjecture, or guess is insufficient to withstand summary judgment." *Sorce v. Naperville Jeep Eagle, Inc.*, 309 Ill. App. 3d 313, 328 (1999). The party moving for summary judgment bears the initial burden of proof. *Nedzvekas v. Fung*, 374 Ill. App. 3d 618, 624 (2007). The movant may meet his burden of proof either by affirmatively showing that some element of the case must be resolved in his favor or by establishing " 'that there is an absence of evidence to support the nonmoving party's case.' " *Nedzvekas*, 374 Ill. App. 3d at 624 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). " 'The purpose of summary judgment is not to try an issue of fact but *** to determine whether a triable issue of fact exists.' " *Schrager v. North Community Bank*, 328 Ill. App. 3d 696, 708 (2002) (quoting *Luu v. Kim*, 323 Ill. App. 3d 946, 952 (2001)). We may affirm on any basis appearing in the record, whether or not the trial court relied on that basis or its reasoning was correct. *Ray Dancer, Inc. v. DMC Corp.*, 230 Ill. App. 3d 40, 50 (1992).

¶ 25    In the case at bar, the trial court found that plaintiff did not owe Under Construction any duties under the insurance policy. In Illinois, the duties to defend and to indemnify are not coextensive, with the obligation to defend being broader than the obligation to pay. *International Minerals & Chemical Corp. v. Liberty Mutual Insurance Co.*, 168 Ill. App. 3d

361, 366 (1988). In determining whether an insurer has a duty to defend its insured, a court looks to the allegations in the underlying complaint and compares them to the relevant provisions of the insurance policy. *Outboard Marine Corp.*, 154 Ill. 2d at 107-08. This principle has been referred to as the " 'eight corners rule.' " *Country Mutual Insurance Co. v. Dahms*, 2016 IL App (1st) 141392, ¶ 37; see also *Farmers Automobile Insurance Ass'n v. Country Mutual Insurance Co.*, 309 Ill. App. 3d 694, 698 (2000). "If the facts alleged in the underlying complaint fall within, or potentially within, the policy's coverage, the insurer's duty to defend arises." *Outboard Marine Corp.*, 154 Ill. 2d at 108. However, if it is clear from the face of the complaint that the allegations fail to state facts that bring the case within, or potentially within, the policy's coverage, an insurer may properly refuse to defend. *State Farm Fire & Casualty Co. v. Hatherley*, 250 Ill. App. 3d 333, 336 (1993) (citing *United States Fidelity & Guaranty Co. v. Wilkin Insulation Co.*, 144 Ill. 2d 64, 73 (1991)).

¶ 26     The basis for the trial court's decision in the case at bar was its finding that Under Construction breached the insurance policy's cooperation clause with respect to plaintiff's investigation of Szymanski's claim. The purpose of a cooperation clause in an insurance policy is to prevent collusion between the insured and the injured person, as well as to make the insurer's investigation possible. *M.F.A. Mutual Insurance Co. v. Cheek*, 66 Ill. 2d 492, 496 (1977). The insurer typically has little or no knowledge of the facts surrounding a claimed loss, while the insured has exclusive knowledge of such facts; accordingly, the insurer is dependent on its insured for fair and complete disclosure. *Waste Management, Inc. v. International Surplus Lines Insurance Co.*, 144 Ill. 2d 178, 204 (1991); *Founders Insurance Co. v. Shaikh*, 405 Ill. App. 3d 367, 374 (2010). "While an insured has no obligation to assist the insurer in any effort to defeat recovery of a proper claim, the cooperation clause does obligate the insured

13

to disclose all of the facts within his knowledge and otherwise to aid the insurer in its determination of coverage under the policy." *Waste Management*, 144 Ill. 2d at 204; *Shaikh*, 405 Ill. App. 3d at 374; *Direct Auto Insurance Co. v. Reed*, 2017 IL App (1st) 162263, ¶ 25.

¶ 27     Where the insurer has sought a declaration of no coverage based on the insured's failure to cooperate, as in the case at bar, a *prima facie* case consists of two elements: (1) a breach of the cooperation clause by the insured and (2) resulting substantial prejudice to the insurer. *Reed*, 2017 IL App (1st) 162263, ¶ 25. On appeal, Szymanski contends that plaintiff failed to establish either element and, therefore, the trial court erred in granting summary judgment in plaintiff's favor.

¶ 28     The burden of establishing a breach of the cooperation clause rests on the insurer. *Cheek*, 66 Ill. 2d at 496. In order to establish such a breach, "the insurer must show that it exercised a reasonable degree of diligence in seeking the insured's participation and that the insured's absence was due to a refusal to cooperate." *Shaikh*, 405 Ill. App. 3d at 374 (citing *Mazzuca v. Eatmon*, 45 Ill. App. 3d 929, 932 (1977)). The insurer must act in good faith to secure the insured's cooperation. *American Access Casualty Co. v. Alassouli*, 2015 IL App (1st) 141413, ¶ 25. " 'Good faith is evaluated not only in terms of what the insurer did to secure cooperation, but also in terms of what the insured failed to do.' " *Alassouli*, 2015 IL App (1st) 141413, ¶ 25 (quoting *Wallace v. Woolfolk*, 312 Ill. App. 3d 1178, 1180 (2000)). Both the determination of whether the insurer exercised reasonable diligence and whether the insured's refusal to cooperate was willful are made by examining the particular facts of the case and must be shown by a preponderance of the evidence. *United Automobile Insurance Co. v. Buckley*, 2011 IL App (1st) 103666, ¶ 27; *Alassouli*, 2015 IL App (1st) 141413, ¶ 25; *Lappo v. Thompson*, 87 Ill. App. 3d 253, 254-55 (1980).

¶ 29    In the case at bar, the trial court found that plaintiff had exercised due diligence in attempting to secure Under Construction's cooperation, and that it found "no basis for requiring any further efforts." However, we cannot say that the record establishes as a matter of law that plaintiff exercised reasonable diligence in seeking Under Construction's participation, or that Under Construction willfully refused to participate in plaintiff's investigation of Szymanski's claim.

¶ 30    The trial court found that plaintiff had "attempt[ed] no less than 15 times over several months to contact [Under Construction], including phone calls, letters, and even a special investigator sent to its registered address and that of its president individually." A closer examination of these efforts, however, reveals that most of them either did not reach Under Construction or did not make clear that Under Construction was required to respond. First, between January 3, 2020, and the filing of the declaratory judgment complaint in April 2020, Shepherd's affidavit avers that plaintiff called Under Construction five times. We note that Shepherd's affidavit does not indicate the phone number called or the person sought to be reached, only that plaintiff "attempted to contact representatives from Under Construction." We also note that, while the dates of the calls establish that they were made during the typical Monday-to-Friday workweek, there is no information as to the times of the calls. As plaintiff acknowledges, Under Construction is a contractor, providing services such as siding installation and interior remodeling. It is not unusual for contractors to be available for phone calls only early in the morning or late in the day—in short, when they are not on the jobsite. There is no indication whether plaintiff took this into consideration or varied the times of the calls, making it impossible to gauge whether the calls were reasonably calculated to reach someone. Most importantly, according to the affidavit, each of those phone calls were

15

unanswered and the voicemail was full. As a result, no message would have been conveyed to Under Construction, as there was no one who spoke to plaintiff's representative and no voicemail was left. Thus, there is no evidence that Under Construction would have been aware of these contact attempts.

¶ 31    Next, as to the letters, Shepherd's affidavit and the letters attached thereto show that, between January 8, 2020, and the filing of the complaint, plaintiff sent Under Construction six letters. As an initial matter, we have no way of knowing whether these letters were received. Only one of them—the reservation of rights letter—was sent via certified mail in addition to being sent by regular mail, and Shepherd's affidavit does not indicate whether any of the letters were returned as undeliverable or if anyone signed for the certified letter. Additionally, only one of those letters explicitly stated that Under Construction's cooperation was required under the policy. See *Alassouli*, 2015 IL App (1st) 141413, ¶ 34 (considering fact that insurer never informed insured of the consequences of noncooperation in finding insurer's efforts insufficient). The nearly-identical letters of January 8 and January 20 merely requested that Under Construction "contact me at the number listed below at your earliest convenience to discuss this claim," without indicating that such cooperation was required or that there was any urgency behind the request. Additionally, a second letter on January 20 implied that Under Construction's participation was not needed, providing that "[t]he matter is receiving our attention and you need not appear at any hearing unless you are contacted by one of our representatives or by someone from our attorney's office." The letter sent on March 12 is the only letter that explicitly states that Under Construction's cooperation is required under the insurance policy and that a failure to cooperate constitutes a breach of the policy. Two additional letters sent after this date contain only a request for payroll records—making no

16

mention of the cooperation clause—and the reservation of rights letter, in which plaintiff sets forth its position that Under Construction has breached the policy. Thus, there was only one letter sent to Under Construction that would have placed it on notice that it was required to cooperate with plaintiff's investigation of Szymanski's claim. We must also note that each letter was sent to the Lincoln Avenue address, despite the fact that plaintiff had received no responses to these letters. None of the letters was sent to Under Construction's registered agent, who had an address on Oxford Avenue. Moreover, none of these letters were sent to the Des Plaines address contained in the original insurance application, which may have been Kaznecki's home address.

¶ 32   Finally, as to the special investigator, we note that, according to Shepherd's affidavit, plaintiff's special investigation unit became involved only at the end of June, two months after the filing of the declaratory judgment complaint. While the special investigator's actions were slightly more extensive and varied from the methods already tried—consisting of an e-mail, two telephone calls, and two in-person contact attempts—the efforts made after plaintiff had already filed a complaint seeking to relieve itself of liability do not mitigate against earlier shortcomings. See *Alassouli*, 2015 IL App (1st) 141413, ¶ 35 (finding insurer's retention of a private investigator after filing the complaint and several years after the accident to be "too little, too late").

¶ 33   Furthermore, the special investigator's actions demonstrate only slightly greater efforts. As with the earlier telephone calls, there is no indication what phone number the special investigator called or who he was trying to reach, and there is no indication what time the telephone calls were made. Both calls were also unanswered and the voicemail was full, meaning that Under Construction may have had no way of knowing of the attempted contact.

As to the e-mail, the e-mail was sent only to one of the two e-mail addresses affiliated with Under Construction—it was not sent to the e-mail address listed on the original insurance application. The e-mail itself also does not explain that Under Construction was required to cooperate or the consequences of noncooperation, only providing that "[i]t is important that we speak to you about the incident as it is relevant to our investigation." Finally, Shepherd's affidavit indicates that the special investigator made an "in-person contact attempt at insured's address" on two occasions in July 2020. There is no indication which address was visited or what time the visit was made. There is also no detail as to the type of location the special investigator visited—for instance, whether it appeared that the business was operating from that address or whether it was some other type of building—which would have been useful in determining whether Under Construction was willfully refusing to cooperate. See, *e.g.*, *Shaikh*, 405 Ill. App. 3d at 370 (when a special investigator visited the insured's purported residential address, she discovered, *inter alia*, a commercial property and a muffler shop). Shepherd also averred that the special investigator left a business card and letter during one of the visits, but no such letter appears in the record, so we have no way of knowing what was communicated in that letter.

¶ 34    Examining the evidence in the record, we cannot find that, as a matter of law, plaintiff established that it exercised a reasonable degree of diligence in seeking Under Construction's participation and that the resulting silence was due to a refusal to cooperate. As noted, an insurer's good faith in seeking the insured's cooperation " 'is evaluated not only in terms of what the insurer did to secure cooperation, but also in terms of what the insured failed to do.' " *Alassouli*, 2015 IL App (1st) 141413, ¶ 25 (quoting *Wallace*, 312 Ill. App. 3d at 1180). While this analysis is fact-specific, we nevertheless find it instructive to consider efforts that other

courts have found to be either sufficient—or insufficient—to establish diligence in seeking an insured's cooperation.

¶ 35    An example of a case in which the insurer's efforts were found to be insufficient is *Alassouli*. In that case, the insured caused a vehicular accident by making a left turn in front of another vehicle, and the driver filed a claim against the insured's insurance company. *Alassouli*, 2015 IL App (1st) 141413, ¶ 1. In investigating the claim, a claims representative for the insurer called the insured, who answered the call and identified himself. *Alassouli*, 2015 IL App (1st) 141413, ¶ 5. However, when the claims representative informed the insured that the call would be recorded, the insured disconnected the call; the claims representative immediately called back, but the call went to voicemail, and the claims representative left a detailed message concerning the need for additional information. *Alassouli*, 2015 IL App (1st) 141413, ¶ 5. The insurer called three more times, leaving messages, but the insured never responded. *Alassouli*, 2015 IL App (1st) 141413, ¶ 5. The insurer then conducted a skip trace, which revealed nothing about the insured's whereabouts. *Alassouli*, 2015 IL App (1st) 141413, ¶ 5. In total, the insurer's efforts spanned 13 days and included five phone calls and a skip trace. *Alassouli*, 2015 IL App (1st) 141413, ¶ 5. The insurer then filed a declaratory judgment complaint, seeking a finding that it owed no duty to defend or indemnify the insured based on his breach of the insurance policy's cooperation clause. *Alassouli*, 2015 IL App (1st) 141413, ¶ 6. After the filing of the complaint, and approximately two years after the accident, the insurer retained a private investigator to locate the insured, who engaged in additional (unsuccessful) efforts to locate him, including visiting his known address, speaking to neighbors in his apartment building, conducting another skip trace, and visiting another address revealed through the skip trace. *Alassouli*, 2015 IL App (1st) 141413, ¶ 10.

¶ 36    On appeal, the *Alassouli* court found that the insurer had not exhibited reasonable diligence in seeking the insured's cooperation, and that its efforts were "cursory." *Alassouli*, 2015 IL App (1st) 141413, ¶ 36. The court found that, "as a matter of law, five attempted phone calls and a skip trace in the matter of less than two weeks and nothing more until a declaratory judgment petition is on the line does not suffice to claim an insurer used reasonable diligence to secure the insured's cooperation." *Alassouli*, 2015 IL App (1st) 141413, ¶ 30. The court noted that the insurer had made no attempt to visit the insured's known address or sent letters, but summarily concluded that the insured was not cooperating after he did not return phone calls. *Alassouli*, 2015 IL App (1st) 141413, ¶ 30. The court also found that the insured's failure to return phone calls served as constructive notice that a problem existed. *Alassouli*, 2015 IL App (1st) 141413, ¶ 33. The court found that the insured had made only minimal effort to contact the insured after he disconnected the first phone call, "and much more could and should have been undertaken to procure his cooperation," such as mailing him letters, visiting his address, or pursuing alternative methods of talking to him. *Alassouli*, 2015 IL App (1st) 141413, ¶ 33. While the court noted that it could not state with any certainty that those efforts would have been fruitful, "their absence demonstrates a cursory investigation." *Alassouli*, 2015 IL App (1st) 141413, ¶ 34. The court also pointed out that there was no evidence that the insurer had ever explained to the insured the consequences of noncooperation, meaning that his failure to cooperate could be explained by a lack of notice as to what was expected. *Alassouli*, 2015 IL App (1st) 141413, ¶ 34. Finally, the *Alassouli* court found that the insurer's retention of a private investigator did not did not minimize its shortcomings, as it hired the private investigator after it had already filed its declaratory judgment complaint and long after the accident. *Alassouli*, 2015 IL App (1st) 141413, ¶ 35. While the court acknowledged the

private investigator's investigation was more active, the court found that it did nothing to absolve the insurer of its duty and was "too little, too late." *Alassouli*, 2015 IL App (1st) 141413, ¶ 35.

¶ 37    By contrast, *Shaikh* provides an example of a case in which the insurer's efforts were found to be sufficient. In that case, the insured was involved in an automobile accident and was sued by the other driver. *Shaikh*, 405 Ill. App. 3d at 368-69. The insured called his insurance company and faxed over a copy of the complaint; during the telephone conversation, the insured provided his current address and phone number. *Shaikh*, 405 Ill. App. 3d at 369. However, later that year, an attorney hired by the insurer to provide the insured's legal defense informed the insurer that correspondence sent to the insured had been returned as undeliverable. *Shaikh*, 405 Ill. App. 3d at 369. When the insurer's representative called the insured's telephone number, the representative learned that service was disconnected. *Shaikh*, 405 Ill. App. 3d at 369.

¶ 38    The insurer then turned the matter over to its special investigation unit, which conducted a database search on LexisNexis that returned the insured's two most recent addresses. *Shaikh*, 405 Ill. App. 3d at 369. The investigator visited both addresses in person, neither of which were the insured's actual residence, and spoke with the occupants about their knowledge of the insured. *Shaikh*, 405 Ill. App. 3d at 370. The insurer then retained a private investigator to locate the insured and hand deliver a letter to him; the private investigator found another address for the insured and personally visited it and spoke to its occupants about the insured, who did not reside there. *Shaikh*, 405 Ill. App. 3d at 370. The private investigator also located the insured's son and called him to inquire about his father, but the son said he had not spoken to his father in years. *Shaikh*, 405 Ill. App. 3d at 370. The private investigator then went to the

address located on the insured's application for insurance and verified that he was no longer residing there. *Shaikh*, 405 Ill. App. 3d at 370. The insurer then sent the insured letters at three different addresses; when one of the addresses showed a forwarding address of the son's address, the insurer pursued that lead by sending a letter to the son's address and having the private investigator personally visit the property and leave a copy of the letter at the door when there was no answer. *Shaikh*, 405 Ill. App. 3d at 370-71. The insurer contacted the son by telephone again, and was informed that the insured might be in prison, so conducted research to verify that the insured was not incarcerated. *Shaikh*, 405 Ill. App. 3d at 371. After the insured failed to appear at the mandatory arbitration hearing in the underlying automobile case, the insurer filed a declaratory judgment action against him. *Shaikh*, 405 Ill. App. 3d at 371.

¶ 39        On appeal, the *Shaikh* court found that the insurer had diligently attempted to secure the insured's cooperation. *Shaikh*, 405 Ill. App. 3d at 378. The court found that the insurer "used sources that were likely to disclose [the insured's] whereabouts, its search was sufficiently broad and successful at producing leads, and it pursued and exhausted every lead it generated." *Shaikh*, 405 Ill. App. 3d at 378. The court noted that, within days of being alerted to a potential problem with the insured's cooperation, the insurer was searching databases and visiting his last-reported addresses, and maintained an active search, including retaining an outside investigation firm. *Shaikh*, 405 Ill. App. 3d at 378. The insurer continued pursuing leads until the investigation "went cold" and none of the efforts generated any further leads. *Shaikh*, 405 Ill. App. 3d at 378.

¶ 40        In the case at bar, we find the efforts undertaken by plaintiff to be much more similar to those in *Alassouli* than in *Shaikh*. While plaintiff made basic efforts to reach Under Construction, it did not take any action when it received no response as a result of those efforts.

22

As noted, courts have found that a lack of response to communication attempts can serve as constructive notice that a problem existed. See, *e.g.*, *Johnson v. Wade*, 47 Ill. App. 3d 610, 615 (1977); *Lappo*, 87 Ill. App. 3d at 255. Here, when plaintiff repeatedly discovered a full voicemail box upon calling Under Construction, it could have shifted its strategy—for instance, reaching out via e-mail, as its special investigator later did. Similarly, when it received no response to its letters, plaintiff could have investigated whether that address was a valid one or if there was another address to be used. Indeed, the special process server retained by plaintiff to serve Under Construction discovered another address that would have been simple for plaintiff to uncover upon even a cursory search—the address of Under Construction's registered agent, located on Oxford Avenue. There is no indication that plaintiff ever directed any communication to the registered agent or to this address, despite the fact that Grochowski had served as the registered agent since 2015. Plaintiff could also have attempted to contact Under Construction at the address in Des Plaines listed in the application for insurance, as the investigator in *Shaikh* did. The lack of response should have been even more unusual to plaintiff given the fact that there is no indication that Under Construction had ever been unreachable previously. Under Construction had been insured by plaintiff since 2016, with the policy renewing several times, meaning that plaintiff would have had contact with the insurance agent at least annually. Additionally, the insurance audit conducted by plaintiff included Under Construction's payroll records, including employee names and wages. Presumably, this information would have come from the business itself, meaning that Under Construction would have been cooperating with plaintiff's requests for information as late as the end of 2019. Thus, its silence when plaintiff contacted it in early 2020 should have suggested that further investigation was necessary.

¶ 41    Moreover, there are several other parties who plaintiff could have contacted to reach Under Construction. It could have begun by contacting Spiewak, the insurance agent who handled Under Construction's insurance policy, to discover if she had any contact with Under Construction or any ideas of how to reach a representative from the company. Further, plaintiff did not contact Spiewak to learn if she could assist in obtaining Under Construction's cooperation, and did not send her a copy of the April 4, 2020, cooperation letter. It could also have contacted Szymanski, the injured employee—he certainly would have had an interest in ensuring Under Construction's cooperation. Plaintiff could have asked Szymanski if he had any different contact information or way to reach his employer. Similarly, plaintiff could have contacted any of the workers listed on the audit that it had completed shortly before plaintiff's claim to discover if any of them had any relevant information. Instead, plaintiff did nothing to discover alternative methods of contacting Under Construction. As in *Alassouli*, while we cannot say that these efforts would have been successful, "their absence demonstrates a cursory investigation" (*Alassouli*, 2015 IL App (1st) 141413, ¶ 34).

¶ 42    We also must note that, unlike in *Shaikh*, it was not until after the filing of the declaratory judgment lawsuit that plaintiff retained the services of its special investigation unit, suggesting a lack of seriousness to the search. Before that point, plaintiff relied solely on making fruitless phone calls and sending letters to the same unsuccessful address. There is no indication that plaintiff even did a search of the Secretary of State's website, which is the most basic of searches to undertake in discovering how to reach a corporation.

¶ 43    Instead, it appears that plaintiff made several rote attempts to reach Under Construction and, when those failed, filed suit seeking a declaration that the cooperation clause had been violated. We cannot say that these efforts were sufficient to demonstrate plaintiff's diligence

or that Under Construction willfully refused to cooperate with plaintiff, and we certainly cannot find this to be the case as a matter of law, as required for a grant of summary judgment. We must also note that all of this occurred at the beginning of the COVID-19 pandemic, and continued during the pandemic. We do not know if the company was even in business during that period of time. In fact, we know that as of the end of 2020, the corporation was involuntarily dissolved. That highlights why it would have been so important for plaintiff to contact Kaznecki at the address contained in the initial insurance application, which may have been his home address. Accordingly, we must reverse the trial court's grant of summary judgment in plaintiff's favor, and have no need to consider whether plaintiff established the second element—that the lack of cooperation substantially prejudiced plaintiff's ability to investigate Szymanski's claim.

¶ 44                                                    CONCLUSION

¶ 45        For the reasons set forth above, the trial court erred in granting summary judgment in plaintiff's favor because plaintiff did not demonstrate as a matter of law that it made reasonable efforts to secure Under Construction's cooperation and that Under Construction willfully refused to cooperate in plaintiff's investigation of Szymanski's claim.

¶ 46        Reversed and remanded.

**No. 1-21-0600**

| | |
|---|---|
| **Cite as:** | *Country Mutual Insurance Co. v. Under Construction & Remodeling, Inc.*, 2021 IL App (1st) 210600 |
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 20-CH-03915; the Hon. David B. Atkins, Judge, presiding. |
| **Attorneys for Appellant:** | David M. Barish and Abdu-Raheem Igbadume, of Katz, Friedman, Eagle, Eisenstein, Johnson, Bareck & Bertuca, P.C., of Chicago, for appellant. |
| **Attorneys for Appellee:** | David W. Porter and Rita Louise Lowery Gitchell, of Chilton Yambert Porter LLP, of Geneva, for appellee. |