2023 IL App (2d) 210732-U
No. 2-21-0732
Order entered May 16, 2023

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| JACQUELYN BROWN, | ) | Appeal from the Circuit Court |
| | ) | of Du Page County. |
| | ) | |
| Plaintiff-Appellant, | ) | |
| v. | ) | No. 19-L-1216 |
| | ) | |
| VILLAGE OF LISLE, | ) | Honorable |
| | ) | Angelo J. Kappas, |
| Defendant-Appellee. | ) | Judge, Presiding. |

PRESIDING JUSTICE McLAREN delivered the judgment of the court.
Justices Hutchinson and Jorgensen concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Summary judgment for village was proper where there was no dispute of material fact that plaintiff slipped on a natural accumulation of ice or freezing rain on train platform. Trial court affirmed.

¶ 2    In this slip and fall case, plaintiff, Jacquelyn Brown, appeals from the summary judgment entered against her and in favor of defendant, Village of Lisle. Plaintiff contends that there were questions of material fact that precluded summary judgment. Because there were no questions of material fact and defendant was entitled to judgment as a matter of law, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4    On December 31, 2018, at approximately 5:30 a.m., plaintiff slipped and fell on the Metra station platform in the Village of Lisle (the village), injuring an ankle and a hip. Approximately 30 minutes before her fall plaintiff noticed freezing rain, and she believed that she slipped on ice as she was boarding the train.

¶ 5    In January 2020, plaintiff filed a two-count first amended complaint against defendant and Alaniz Landscape Group, Inc. Count I alleged that defendant's negligence caused plaintiff to slip on ice and sustain injuries when she attempted to board the train at the Lisle Metra station. Count II alleged liability against Alaniz Landscape Group. On plaintiff's motion, the trial court dismissed count II against Alaniz Landscape Group.

¶ 6    Defendant asserted affirmative defenses including 1) that it owed no duty to plaintiff because the alleged injuries were caused by a natural accumulation of snow or ice; 2) immunity pursuant to section 3-102 of the Local Governmental and Government Employee Tort Immunity Act (Act) (745 ILCS 10/3-102 (West 2018)), asserting that it had no actual or constructive notice of the alleged dangerous condition; and 3) immunity pursuant to section 3-105 of the Act (*id.* § 3-105), asserting that plaintiff's alleged injuries were caused by weather conditions.

¶ 7    During plaintiff's discovery deposition, she testified that, on the morning of the incident, she noticed that it was freezing rain outside from the time she left her house in Lombard at approximately 4:50, to the time she arrived at the Lisle train station 20 minutes later at approximately 5:10-5:15 a.m. She explained that freezing rain is "[n]ormal rain, and then when it hits the ground, it turns to ice." Plaintiff waited in the car until she saw the train approaching the station. As plaintiff walked from the parking lot to the train platform, she noticed crunching under her feet and saw freezing rain on the ground. Plaintiff did not see any salt on the ground of the parking lot or on the train platform. She did not see any mounds, piles, or accumulations of snow anywhere near the area where she slipped and fell on the train platform. The train platform was lit.

The platform was concrete with a yellow strip of raised truncated cones at the edge, closest to the tracks.

¶ 8 After plaintiff examined a photograph of the Lisle train station and platform area, she placed a mark where she believed she slipped and fell. Plaintiff testified that the mark indicated that she fell on the concrete portion of the train platform next to the yellow strip. The mark on the photograph appears on the concrete area of the platform next to the yellow strip. Plaintiff testified that as she was boarding the train, she reached up with her right hand to grab the door's handrail when her right foot slipped on "black ice." Plaintiff then fell, causing an ankle fracture and hip tear. As plaintiff fell, she looked upward. After she fell, she did not look at the ground. Plaintiff did not see pools of ice on the train platform either prior to or after her fall. Plaintiff based her testimony that there was ice on the train platform on the fact that she felt crunching under her shoes while she walked toward the train.

¶ 9 Jason Elias, the director of defendant's public works department (the department) testified during a discovery deposition that in December 2018 the department received forecasts from Continental Weather Service (Continental) every morning and every afternoon with forecasts for the following day. The department's director, superintendent, or foreman then determined if a weather forecast qualified for a weather event response from the village. When it rained and was below freezing, the department responded based on the surface conditions of the roads and walkways and whether it had notice of slippery conditions. The department's policy was that during normal working hours, Monday-Friday from 7:00 a.m. to 3:30 p.m., the director, superintendent, or foreman monitored slippery conditions within the village. Outside of normal working hours, the Lisle police department patrolled the village 24 hours a day and was responsible for notifying the public works department of weather events requiring snow or ice removal. Outside of normal working hours, the department relied on the Lisle police department to notify it

of a weather event because the department had limited resources and it could not afford to staff the department 24 hours a day, seven days a week.

¶ 10    Justin Ross, the superintendent of the department at the time of the incident, testified during his discovery deposition that the department received weather forecasts twice a day from Continental. If a significant weather event was forecasted, the department would provide staff. But if it was a questionable weather event, the department would rely on the Lisle police department to notify it. A significant weather event included snow of five inches or more and rain with temperatures below 32 degrees Fahrenheit.

¶ 11    On Sunday, December 30, 2018, the day before the incident, Continental sent an email to Elias and Ross at 2 p.m. stating "24 HOUR FORECAST ENDING 2 PM MON." The forecast stated, "PRECIPITATION: LIGHT RAIN (POSSIBLE FREEZING RAIN INITIALLY) *** PRECIPITATION TIME: 4-7 AM TILL 2-4 AM TUE." For Monday, (the day of plaintiff's alleged slip and fall) Continental predicted a minimum temperature between 30-32 degrees and a maximum temperature of 37 degrees. It also predicted that on Monday, between 7-9 a.m. the temperature would be above 32 degrees. In the "remarks" section, the forecast stated:

> "Rain will spread into the area for the a.m. commute. Temps in the Chicago metro area will likely be above freezing so that the area will likely be spared any icing, but the rest of the area will be looking at a potential 2-4-hour period of potential light icing. Most areas have some residue down from the past system, but you may want to have some crew come in early to be safe for the commute."

The forecast also advised of a winter weather advisory 4 a.m. to 9 a.m., Monday, December 31, for Du Page County.

¶ 12    Regarding the email from Continental delivered the day before the incident, Elias testified that, based on his experience, he could not say for certain that an intervention by the department was required. Elias testified:

> "Every weather event is different. Every storm is different. And just given the fact that the temperatures were hovering at or above freezing, I wouldn't automatically say that there was something that needed to be done [on that specific day.]"

¶ 13    At the time of the incident, there was a lease station agreement in effect between defendant and Metra (identified as the Burlington Northern and Sante Fe Railway Company, "BNSF"). Regarding maintenance of the train platform defendant agreed to "promptly remove ice and snow from the platforms *** and when necessary, shall de-ice the same *** with commercial products in order that [it] will be suitable for use."

¶ 14    Also, at the time of the incident, the department had a snow and ice control policy. The introduction to the policy stated, in part, "It is understood that weather, being an uncontrollable situation, will have to be dealt with using human judgement on an ongoing basis and that this plan is a guide." One of the stated goals of the policy was "the safe and efficient removal of snow and ice from the Village owned streets, *** and commuter platforms." The policy listed the "Central Business District," which included the train platform at issue, as its highest priority location. According to defendant's policy, all department employees were "on call" for snow and during extreme conditions.

¶ 15    In May 2021, defendant filed a motion for summary judgment. Defendant contended, *inter alia*, that it owed plaintiff no duty of care because she slipped on a natural accumulation of ice, and it was immune from liability for injuries caused by weather conditions pursuant to section 3-105(a) of the Act (745 ILCS 10/3-105(a) (West 2018)). Defendants also argued that it was immune

from liability for the alleged icy condition because it had no actual or constructive notice of the condition prior to plaintiff's slip and fall, pursuant to section 3-102 of the Act (*id.* § 3-102).

¶ 16    In plaintiff's response to defendant's motion she argued, in part, that she slipped and fell on an unnatural accumulation of water and ice formed on the yellow strip of raised truncated cones on the train platform.

¶ 17    In its reply, defendant noted that the yellow strip of truncated cones was a federally mandated design in compliance with the Americans with Disabilities Act (ADA) (42 U.S.C. § 12101 *et seq.* (2012)) and Federal ADA Standards for Accessible Design §705 that applies to train platforms (36 C.F.R. § 1191, App. D at 705) ("Detectable Warnings").

¶ 18    In ruling on the motion for summary judgment, the trial court determined that plaintiff slipped on a natural condition and, therefore, defendant had no common-law duty to plaintiff. The court explained that plaintiff failed to raise a question of material fact regarding whether she slipped on an unnatural accumulation of ice because she testified that she was unsure if she slipped on the yellow ADA strip. The court also ruled that defendant was immune for injuries caused by weather conditions pursuant to section 3-105 of the Act, there was no voluntary undertaking due to defendant's policies or contract with Metra, and defendant had no actual or constructive notice pursuant to section 3-102 of the Act. Therefore, the trial court granted summary judgment in favor of defendant. After the trial court denied plaintiff's motion to reconsider, plaintiff filed this timely appeal.

¶ 19                                    II. ANALYSIS

¶ 20    This appeal involves the trial court's granting of a motion for summary judgment, which we review *de novo. Johnson v. Armstrong*, 2022 IL 127942, ¶ 31. A court properly grants a motion for summary judgment where the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving

party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2020). A genuine issue of material fact exists where the material facts are disputed or, if they are undisputed, where reasonable persons might draw different inferences from them. *Johnson*, 2022 IL 127942, ¶ 31. However, speculation, conjecture, or guess is insufficient to withstand summary judgment. *Country Mutual Insurance Co. v. Under Construction & Remodeling, Inc.*, 2021 IL App (1st) 210600, ¶ 24 (citing *Sorce v. Naperville Jeep Eagle, Inc.*, 309 Ill. App. 3d 313, 328 (1999)).

¶ 21    Where the plaintiff seeks recovery based on the defendant's alleged negligence, the plaintiff must plead and prove the existence of a duty owed by the defendant, a breach of that duty, and injury proximately resulting from that breach. *Murphy-Hylton v. Lieberman Management Services, Inc.*, 2016 IL 120394, ¶ 18. Whether a duty exists is a question of law appropriate for summary judgment. *Carney v. United Pacific R.R. Co.*, 2016 IL 118984, ¶ 26. Absent facts from which the court could reasonably infer the existence of a duty, a plaintiff may not recover as a matter of law and summary judgment in favor of the defendant is proper. *Id.*

¶ 22    Here, plaintiff argues that the trial court erred by determining that defendant did not owe her a duty as a matter of law. Defendant counters that the trial court properly found that it owed no duty to plaintiff for the natural accumulation of ice or freezing rain on the train platform. We agree with defendant.

¶ 23    Generally, landowners owe no duty to remove natural accumulations of ice, water, or snow from their property. *Krywin v. Chicago Transit Authority*, 238 Ill. 2d 215, 227 (2010). This common-law natural accumulation rule is codified in section 3-105(a) of the Tort Immunity Act. *Moore v. Chicago Park District*, 2012 IL 112788, ¶ 11. "Section 3-105 grants public entities absolute immunity from liability for injuries caused by natural accumulations of snow and ice, but only conditional immunity when the injury is caused by an unnatural accumulation." *Id.* See also *Ziencina v. County of Cook*, 188 Ill. 2d 1, 13-14 (1999) (under the immunity granted by section 3-

105, "a local public entity has no duty to remove natural accumulations of ice and snow from public property"). Natural accumulations are "caused by the mere falling and settling of snow or precipitation." *Mickens v. CPS Chicago Parking*, LLC, 2019 IL App (1st) 180156, ¶ 26.

¶ 24    However, landowners owe a duty of reasonable care to prevent unnatural accumulations of ice and snow on their premises where the accumulation is caused by a defective condition of the property. *Murphy-Hylton*, 2016 IL 120394, ¶ 21.

¶ 25    Plaintiff argues that genuine issues of material fact exist as to whether the ADA strip was a defect that created an unnatural accumulation of ice and whether plaintiff slipped on the icy ADA strip. Defendant responds that plaintiff has not presented any evidence that she slipped and fell on an unnatural accumulation of ice.

¶ 26    To survive a motion for summary judgment in cases involving injuries resulting from accumulations of ice, snow, or water, a plaintiff must provide sufficient evidence to allow a trier of fact to find that the defendant was responsible for an unnatural accumulation of water, ice or snow that caused plaintiff's injuries. *Hornacek v. 5th Avenue Property Management*, 2011 IL App (1st) 103502, ¶ 30.

¶ 27    Here, plaintiff failed to submit any evidence that would allow a fact finder to find (1) that she slipped on the yellow ADA strip, or (2) that the yellow ADA strip created an unnatural accumulation of ice. Plaintiff acknowledged as much in her deposition testimony when she testified that she slipped on "the concrete area right before the yellow [ADA strip] part," she could not "really recall" where she slipped and fell, and she was not sure whether she was on the yellow grooved portion of the platform when she slipped and fell. Further, plaintiff testified regarding a photograph of the train platform that she marked indicating where she slipped and fell. The mark appears near, but not on, the yellow ADA strip. Therefore, nothing in the record supports plaintiff's claim that she was on the yellow ADA strip when she slipped and fell.

¶ 28 Even if plaintiff had slipped and fallen on the yellow ADA strip, she submitted no evidence that the strip created an unnatural accumulation. Plaintiff contends that when it rains, water accumulates on the strip, which is comprised of truncated cones, and the strip retains water. However, plaintiff presented no evidence, from an expert or otherwise, to support her argument or theory. Plaintiff's speculation and conjecture are insufficient to create a material issue of fact to survive a motion for summary judgment. *Kasper v. McGill Management Inc.*, 2019 IL App (1st) 181204, ¶ 29. See also *Madeo v. Tri–Land Properties, Inc.*, 239 Ill. App. 3d 288, 294 (1992) (We held that the plaintiff's speculation as to the cause of the ice that he slipped on was insufficient to withstand the defendant's motion for summary judgment). Therefore, the trial court properly determined that plaintiff fell on a natural accumulation of ice.

¶ 29 Next, plaintiff argues that defendant is not entitled to immunity because it voluntarily assumed the duty to remove snow and ice from the train platform due to its snow and ice removal policy and its contract with Metra. Defendant responds that plaintiff cannot rely on this theory in resisting summary judgment below—and by extension cannot rely on it on appeal—because her complaint did not allege that theory. However, defendant has forfeited any objection to the lack of specificity in pleading the voluntary undertaking theory because defendant failed to object below when plaintiff raised this theory in her response to defendant's motion for summary judgment. Instead, defendant addressed the theory in its reply to plaintiff's response. By failing to object to the pleading deficiency in the trial court, defendant forfeited this issue See *Williams v. Alfred N. Koplin & Co.*, 114 Ill. App. 3d 482, 486 (1983) (pleading deficiency is forfeited where the party fails to object to the theory advanced by the opponent in response to the motion for summary judgment).

¶ 30 "Under the voluntary-undertaking theory, where a person voluntarily agrees to perform a service necessary for the protection of another person or their property, a duty may be imposed on

the party undertaking the service; that party must perform the service in such a manner as not to increase the risk of harm to the other person who relies on the undertaking." *Claimsone v. Professional Property Management, LLC.*, 2011 IL App (2d) 101115, ¶ 21. This theory applies to cases of misfeasance (where a party performs a promised service negligently) and nonfeasance (where a party fails to perform the promised service altogether). *Id.* ¶ 22. In a case involving nonfeasance, " 'a plaintiff's reliance on the defendant's promise is an independent, essential element' of the case.' "*Id.* (quoting *Bourgonje*, 362 Ill. App.3d at 997).

¶ 31 The voluntary undertaking theory is to be construed narrowly, and the duty of care imposed upon a party is strictly limited to the extent of the undertaking. *Elam v. O'Connor & Nakos, Ltd.*, 2019 IL App (1st) 181123, ¶ 41. Whether a defendant has voluntarily undertaken a duty to a plaintiff is a question of law for the trial court to decide. *Jakubowski v. Alden-Bennett Construction Co.*, 327 Ill. App. 3d 627, 639 (2002).

¶ 32 The voluntary-undertaking theory is derived, in relevant part, from section 324A (addressing liability to an injured third party for negligent performance of an undertaking) of the Restatement (Second) of Torts (Restatement) (Restatement (Second) of Torts § 324A (1965)), which provides:

> "Liability to Third Person for Negligent Performance of Undertaking
>
> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his *failure to exercise reasonable care* to protect his undertaking, if
>
> > (a) his failure to exercise reasonable care increases the risk of such harm, or
> >
> > (b) he has undertaken to perform a duty owed by the other to the third person, or
> >
> > (c) the harm is suffered because of reliance of the other or the third person upon the

undertaking." (Emphasis added.) Restatement (Second) of Torts § 324A (1965). See *Bell v. Hutsell*, 2011 IL 110724, ¶ 12 (recognizing the adoption of section 324A in Illinois).

¶ 33    Plaintiff relies on subsection (c): reliance. Plaintiff does not claim that she personally relied on the contract between defendant and Metra. Rather, plaintiff argues that Metra relied on defendant to provide snow and ice removal. However, here, where plaintiff has alleged that defendant failed to remove a natural accumulation of ice, also known as nonfeasance, her reliance on defendant's voluntary undertaking is an independent element necessary to avoid summary judgment. See *Claimsone*, 2011 IL App (2d) 101115, ¶ 22. To establish reliance, the plaintiff must be unaware of the actual circumstances and unable to determine such facts on their own. *Lewis v. Chicago Trucking, Inc.*, 409 Ill. App. 3d 240, 256 (2011). Here, plaintiff herself observed freezing rain as she drove to the train station and felt "crunching" that she identified as black ice, under her feet as she walked on the train platform. Therefore, nothing in the record shows that plaintiff was unaware of the risk posed by the alleged ice on the train platform and, therefore, nothing in the record supports an argument that plaintiff relied in some way on defendant's purported undertaking.

¶ 34    Plaintiff also argues that defendant's failure to "promptly remove ice *** from the platforms," as required by the contract with Metra, caused plaintiff to slip and fall. Plaintiff correctly notes that the terms of the contract define the scope of the voluntary undertaking. *Eichler v. Plitt Theaters, Inc.*, 167 Ill. App. 3d 685 (1988).

¶ 35    In *Eichler*, the plaintiff slipped and fell outside a shopping center on naturally accumulated ice. *Id.* at 692. Urban, one of the defendants, had entered into an easement agreement with the property owner requiring it to perform the "*prompt* removal of all *** snow and ice." (Emphasis added.) *Id.* at 688. We held that a strict interpretation would "be absurd" because "it would create a sisyphean duty." *Id.* at 693. Therefore, we determined that the easement required the "removal

of all snow and ice that [was] reasonably practical." *Id.* We held that summary judgment was improper because there was evidence that the parking lot was covered with ice, and an issue of material fact existed as to whether the defendants were negligent. *Id.*

¶ 36    Here, pursuant to the Metra contract, defendant agreed to "promptly remove ice and snow from the [train] platforms *** and when necessary, to de-ice the same."

¶ 37    However, contracts must be reasonably construed so as not to lead to absurd results. *Id.* To strictly interpret the language at issue would obligate defendant to remove every bit of freezing rain immediately as it hit the train platform and froze to ice. This strict interpretation would be absurd indeed. See *id.* It "would create a sisyphean duty." *Id.* Therefore, we determine that defendant was required to remove ice and snow from the train platform and to de-ice, when necessary, within a reasonable time.

¶ 38    Here, there is no evidence that defendant failed to remove the alleged ice from the train platform within a reasonable time. Plaintiff testified that she saw freezing rain for the first time when she left her house approximately 30 minutes before she slipped and fell. The weather report provided to defendant was, at best, equivocal. To require defendant to remove freezing rain within 30 minutes where it had no actual or constructive notice, and limited resources, would be clearly unreasonable. To hold otherwise would require defendant to stand guard 24 hours a day, 7 days a week and to remove snow and ice immediately as it touched the ground. This would eviscerate the common-law natural accumulation rule (see *Krywin*, 238 Ill. 2d at 227) and section 3-105 of the Act. Therefore, we hold that summary judgment was proper because there was no evidence that defendant was negligent regarding its obligations under its contract with Metra or otherwise.

¶ 39    We also note that plaintiff's reliance on defendant's policy is misguided. A duty of care is not created by a defendant's self -imposed rules or guidelines. See *Rhodes v. Illinois Central Gulf R.R.*, 172 Ill. 2d 213, 238 (1996); *Gore v. Pilot travel Centers, LLC*, 2021 IL App (3d) 210077,

¶ 18 ("the violation of a defendant's internal rules or guidelines do not constitute evidence of a defendant's negligence or failure to use reasonable care.").

¶ 40 Plaintiff cites *Schoondyke v. Heil, Heil, Smart & Golee, Inc.*, 89 Ill. App. 3d 640 (1980), ands *Tressler v. Winfield Village Cooperative, Inc.*, 134 Ill. App. 3d 578 (1985). In these cases, the landowners made direct promises to the plaintiffs to keep the property free of snow or ice accumulation and then failed to do so. Here, defendant did not make a direct promise to plaintiff. Therefore, *Schoondyke* and *Tressler*, are distinguishable from this case.

¶ 41 In addition, plaintiff cites *Mickens, LLC*, 2019 IL App (1st) 180156, and *Hornacek*, 2011 IL App. (1st) 103502, to support her argument. However, both cases involve evidence of an unnatural accumulation of snow or ice created by snow plowing. *Mickens,* 2019 IL App (1st) 180156, ¶¶ 42-46; *Hornacek* , 2011 IL App. (1st) 103502, ¶¶ 31-32. Here, there is no evidence that an unnatural accumulation of snow or ice caused plaintiff to slip and fall. Therefore, *Mickens* and *Hornacek* are distinguishable from this case.

¶ 42                                    III. CONCLUSION

¶ 43 The judgment of the circuit court of Du Page County is affirmed.

¶ 44 Affirmed.