2022 IL App (1st) 210931

No. 1-21-0931

Third Division
June 22, 2022

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| STONEGATE INSURANCE COMPANY, | ) | Appeal from the Circuit Court |
| | ) | of Cook County. |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | No. 2014 CH 5853 |
| | ) | |
| JOHN F. SMITH, CAROLE A. SMITH, | ) | |
| TIMBERS IN PALOS CONDOMINIUM | ) | The Honorable |
| ASSOCIATION, REBECCA LERFELT, | ) | Anna M. Loftus, |
| MARY SEEGO, TRAVELERS HOME & | ) | Judge Presiding. |
| MARINE INSURANCE COMPANY, ALL | ) | |
| UNKNOWN RENTERS AND CARRIERS | ) | |
| ASO, ALLSTATE INSURANCE COMPANY, | ) | |
| and PAULINE QUIGLEY, | ) | |
| | ) | |
| Defendants-Appellees. | ) | |
| | ) | |

_____

PRESIDING JUSTICE GORDON delivered the judgment of the court, with opinion.
Justices McBride and Ellis concurred in the judgment and opinion.

**OPINION**

¶ 1        The instant appeal arises from a dispute regarding the interpretation of coverage clauses in

a homeowner's insurance policy. Defendant John F. Smith (Smith), a carpenter by trade, was

performing plumbing work at a townhouse residence owned by Pauline Quigley, also a defendant in this case. In the course of this plumbing work, Smith used a torch to heat the pipes he was working with. The flame from the torch spread through the unit upward and started a fire, causing substantial damage to an upstairs area.

¶ 2    The owner of the upstairs unit that was damaged by the fire carried a homeowner's policy issued by Travelers Home and Marine Insurance Co. (Travelers). Allstate Insurance Company (Allstate) was the master carrier for the Timbers in Palos Condominium Association (Association), to which the damaged units belong. Smith carried a homeowner's insurance policy with Stonegate Insurance Company (Stonegate). It is the interpretation of the Stonegate insurance policy that is at issue here.

¶ 3    Travelers paid about $38,000 to the owner of the neighboring unit for damages caused by the fire. Allstate paid about $66,000 in damages to the Association. Both Travelers and Allstate filed subrogation claims against Stonegate, claiming that Smith was negligent. Stonegate filed a declaratory action urging the court to find that the damages paid by Travelers and Allstate are excluded from its coverage under the policy it issued to Smith. After discovery was completed, the trial court found that the Stonegate homeowner's policy covered the damages at issue and granted summary judgment in favor of Allstate. Stonegate appeals the summary judgment order and argues that the work performed by Smith is excluded under Stonegate's homeowner's policy. For the following reasons, we affirm the trial court's decision granting summary judgment in favor of Allstate. Travelers' damages are not part of this appeal.

¶ 4                                  BACKGROUND

¶ 5    On March 28, 2013, Smith was performing plumbing services at Quigley's residence. More specifically, according to Smith, he was replacing a shower valve. At the time, Smith had been

a union carpenter for 30 years, but not a plumber, and was unemployed. There is no indication in the record that Smith received any type of compensation for the replacement of the shower valve, nor does Stonegate contend that Smith did. Rather, according to his deposition testimony, Smith was replacing this shower valve as a favor for a friend, who is the son-in-law of Quigley. Smith testified that this was "not something [he] typically do[es]." He also testified that he brought his own tools, including a propane tank with a nozzle, pipe cutters, hack saws, a drywall knife, and a hammer.

¶ 6     In the course of replacing the shower valve, Smith engaged in a practice known colloquially as "sweating the pipes." Smith described this practice as follows: "That means that the pipes that supply [the shower] valve are made of copper. When you connect the copper and gutter, it's called sweating. What you are doing is melting lead into the joints."

¶ 7     As an initial step, Smith attempted to remove the old copper fittings from the shower valve. He did this by heating the copper fittings with a torch, thereby melting the lead that fused the fitting and the valve together, which, according to Smith, would allow the fitting to slip off. However, as Smith was using the torch to heat the fittings, the fiberglass insulation behind the bathroom wall caught fire. That fire spread upward to the neighboring unit, causing substantial damage to that unit.

¶ 8     The owner of the damaged unit upstairs received $38,221.41 through her Travelers homeowner's insurance policy for damages caused by the fire. The Association received $66,000 through its master carrier policy with Allstate. Both Travelers and Allstate filed subrogation claims against Smith.

¶ 9     The foregoing account of events is not in dispute. What is in dispute is the parties' conflicting interpretation of the applicability of Smith's homeowner's policy with Stonegate

for the period from February 20, 2013, to February 20, 2014. That policy included liability coverage, which is the central point of contention in the case at bar. Since this case has a lengthy procedural history, we do not discuss each motion and order in detail. Rather, we include an overview of the procedure leading up to the two orders on appeal, which are discussed in detail at the end of this section.

¶ 10        On April 7, 2014, Stonegate filed its first complaint for declaratory judgment, asking the court to find that Stonegate was under no obligation to indemnify, defend, or otherwise provide coverage for damages caused by the March 28, 2013, fire. Stonegate made three arguments in its initial complaint. First, Stonegate argued that Smith breached the duty to cooperate and provide information to Stonegate by failing to properly notify Stonegate of the fire and, therefore, the "condition precedent" (notice and cooperation) to coverage was breached. Second, Stonegate argued that its policy excluded coverage for business pursuits, which, according to Stonegate, Smith was engaged in when he was replacing the shower valve. Finally, Stonegate argued that the homeowner's insurance policy it issued to Smith was excess coverage to all other insurance on the properties affected by the fire.

¶ 11        On November 12, 2014, Allstate filed a motion to dismiss under section 2-615 of the Code of Civil Procedure (735 ILCS 5/2-615 (West 2014)). Allstate argued that Stonegate's complaint should be dismissed due to lack of a justiciable controversy because there was no action pending against Allstate at the time. Allstate also argued that Stonegate failed to plead sufficient facts to establish a declaratory action because the exclusions cited by Stonegate were inapplicable here. Finally, Allstate argued that Stonegate's allegations regarding notice and cooperation were "conclusory and unsupported by any facts." The court set a briefing schedule, but Stonegate amended its complaint in the meantime.

¶ 12        On January 14, 2015, Stonegate filed its first amended complaint for declaratory judgment. Stonegate's updated complaint, which now included five separate counts, reiterated many of the same allegations as the initial complaint. Under count I (waiver of subrogation), Stonegate argued that Association insurance is always primary over a homeowner's policy, so Allstate cannot subrogate. Under count II (waiver of subrogation), it argued that the condominium declaration for the Association (to which Stonegate did not have access) may have prohibited subrogation actions by Travelers and Allstate. Under count III ("professional, plumbing, business pursuits exclusion"), it argued that the damages are excluded from coverage because they were caused by Smith's negligence in the performance of professional, plumbing, and business pursuits. Under counts IV and V, Stonegate repeated its arguments.

¶ 13        On February 27, 2015, Allstate filed its second motion to dismiss under section 2-615. Again, it argued that Stonegate's first amended complaint should be dismissed because there was no justiciable controversy, as there was no claim pending against Allstate. Allstate also argued that all counts should be dismissed because Stonegate improperly comingled multiple causes of action in violation of sections 2-613 and 2-603 of the Code of Civil Procedure (735 ILCS 5/2-603, 2-613 (West 2014)). Regarding counts I and II, Allstate argued that Stonegate failed to plead a legally cognizable cause of action, as there were no facts alleged in support of its legal theory. Regarding count III, Allstate argued that the policy language of the homeowner's policy did not exclude the type of activity that Smith was engaged in when the fire started, so Stonegate's coverage was not precluded. Finally, Allstate argued that counts IV and V should be dismissed because they were conclusory.

¶ 14        On September 15, 2015, the court ruled on Allstate's second motion to dismiss. The court struck counts I, II, IV, and V but gave Stonegate the opportunity to replead them. The court

allowed Stonegate to proceed with count III ("professional, plumbing, business pursuits exclusion").

¶ 15    On October 6, 2015, Stonegate filed its second amended complaint for declaratory judgment. Stonegate reduced its allegations to two counts: one count of "professional, plumbing, business pursuits exclusion" and one count of "breach of cooperation & notice prior to this Lawsuit." On November 10, 2015, Allstate filed its answer to that complaint.[1]

¶ 16    After an extended period of discovery, which included, among other things, Smith's deposition, Allstate filed its first motion for summary judgment on October 17, 2019. Allstate's primary argument against count I was that the plain language of the policy exclusions did not preclude Stonegate's coverage of the fire caused by Smith's work at the Quigley residence. Regarding count II, Allstate argued that Smith's deposition testimony demonstrated that he cooperated with Stonegate regarding the incident, as he spoke with both the firefighters who arrived on scene, as well as Stonegate's investigator, Gunther Polak, who interviewed Smith after the incident and stated that Smith had "answered all [his] questions."

¶ 17    On November 25, 2019, Stonegate filed its response to Allstate's first motion for summary judgment. Stonegate's response focused on one central argument: Smith's plumbing work at the Quigley residence on the day of the fire is not covered under Smith's homeowner's policy because that policy excludes professional services, which, according to Stonegate, includes plumbing. The court denied the motion not because there was necessarily a material fact in dispute but because the court could not decipher which provisions of the homeowner's policy Stonegate was attempting to cite in its argument: "I denied the motion without prejudice. It

_____

[1]Allstate also filed a cross-claim for subrogation against Smith. Stonegate subsequently moved to sever that tort claim from the declaratory action. The court granted Stonegate's motion, and that case was transferred to the law division.

was not due to the defendant not meeting its burden, instead it was because I could not distinguish [the] particular policy provisions [that] plaintiff was referring to in its complaint, and I didn't want to guess."

¶ 18    On October 17, 2019, Allstate filed its second motion for summary judgment, mirroring its first motion. Following motion practice, the court held a hearing on Allstate's second motion for summary judgment on May 7, 2021. The court addressed whether Smith's plumbing services at the Quigley residence should be excluded from Stonegate's coverage because such services, according to Stonegate, constituted "professional services," which are excluded from coverage by the text of the homeowner's policy. The court examined the relevant case law and determined that, to qualify as a professional service, the service in question must be primarily of an intellectual or mental nature. The court found that Smith's heating of the pipes that ultimately resulted in a fire was manual in nature, rather than mental or intellectual. Because the court concluded Smith's work was a manual service, it held that the professional services exclusion did not apply and that Stonegate would not be absolved from providing coverage.

¶ 19    The court also addressed whether Smith was engaged in a "business pursuit," which would also have absolved Stonegate of its coverage obligations under the terms of the homeowner's policy. Regarding this argument, the court found that Stonegate had not shown that "Smith's work was in connection with a business owned or financially controlled by him or related to the partnership that he is a member of. He was not in the business—in business as a plumber." As such, the court held that the business pursuits exclusion did not apply.

¶ 20    The court considered the issue of whether Smith had provided notice to, and cooperated with, Stonegate. The court found that these issues must be considered separately. On the issue of cooperation, it ruled in favor of Allstate, finding that Stonegate was not reasonably diligent

in communicating with Smith and seeking his cooperation and that, once Stonegate asked Smith to speak with one of Stonegate's investigators regarding the fire, Smith did cooperate by answering the investigator's questions. The court did not rule on the issue of notice and set a separate briefing schedule and hearing date to address that issue, for which Allstate filed another motion for summary judgment.

¶ 21　　On July 23, 2021, the trial court held a hearing on the notice issue. The trial court granted Allstate's motion for summary judgment, meaning that all issues had then been addressed and resolved.

¶ 22　　On August 5, 2021, Stonegate filed its notice of appeal challenging the court's May 7, 2021, and July 23, 2021, rulings. Defendant did not file a brief, so we take the instant appeal on plaintiff's brief and the record alone. See *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 133 (1976).

¶ 23　　　　　　　　　　　　　　　　ANALYSIS

¶ 24　　On appeal, Stonegate argues that the fire damage in this case is excluded from coverage because (1) Smith was rendering a professional service when the fire started, (2) Smith was engaged in a business pursuit when the fire started, (3) Smith failed to provide notice to, and cooperate with, Stonegate, and (4) it is "nuts" to assume that Smith's apparently negligent plumbing service at another person's residence would be covered by his homeowner's policy.[2] Before addressing these contentions, we set forth the standard of review.

¶ 25　　　　　　　　　　　　　　I. Standard of Review

¶ 26　　A trial court may grant summary judgment only "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as

---

[2]In the analysis that follows, we refer to this fourth argument as "scope of coverage."

to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2020). The trial court considers these documents and exhibits in the light most favorable to the nonmoving party. *Home Insurance Co. v. Cincinnati Insurance Co.*, 213 Ill. 2d 307, 315 (2004). We review a trial court's decision to grant a motion for summary judgment *de novo*. *Country Mutual Insurance Co. v. Under Construction & Remodeling, Inc.*, 2021 IL App (1st) 210600, ¶ 23. *De novo* consideration means we perform the same analysis that a trial judge would perform. *Country Mutual Insurance Co.*, 2021 IL App (1st) 210600, ¶ 23. " 'The construction of an insurance policy and a determination of the rights and obligations thereunder are questions of law for the court which are appropriate subjects for disposition by way of summary judgment.' " *Steadfast Insurance Co. v. Caremark Rx, Inc.*, 359 Ill. App. 3d 749, 755 (2005) (quoting *Crum & Forster Managers Corp. v. Resolution Trust Corp.*, 156 Ill. 2d 384, 391 (1993)).

¶ 27    "Summary judgment is a drastic measure and should only be granted if the movant's right to judgment is clear and free from doubt." *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102 (1992). However, "[m]ere speculation, conjecture, or guess is insufficient to withstand summary judgment." *Sorce v. Naperville Jeep Eagle, Inc.*, 309 Ill. App. 3d 313, 328 (1999). The party moving for summary judgment bears the initial burden of proof. *Nedzvekas v. Fung*, 374 Ill. App. 3d 618, 624 (2007). The movant may meet his burden of proof either by affirmatively showing that some element of the case must be resolved in his favor or by establishing " 'that there is an absence of evidence to support the nonmoving party's case.' " *Nedzvekas*, 374 Ill. App. 3d at 624 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). " 'The purpose of summary judgment is not to try an issue of fact but *** to determine whether a triable issue of fact exists.' " *Schrager v. North Community Bank*, 328 Ill.

App. 3d 696, 708 (2002) (quoting *Luu v. Kim*, 323 Ill. App. 3d 946, 952 (2001)). We may affirm on any basis appearing in the record, whether or not the trial court relied on that basis or its reasoning was correct. *Ray Dancer, Inc. v. DMC Corp.*, 230 Ill. App. 3d 40, 50 (1992).

¶ 28    " 'An insurance policy is a contract between the company and the policyholder, the benefits of which are determined by the terms of the contract unless the terms are contrary to public policy.' " *The Hanover Insurance Co. v. MRC Polymers, Inc.*, 2020 IL App (1st) 192337, ¶ 36 (quoting *State Farm Mutual Automobile Insurance Co. v. Villicana*, 181 Ill. 2d 436, 453 (1998)). In construing the language of an insurance policy, a court must ascertain and give effect to the intention of the parties as expressed in their agreement. *Villicana*, 181 Ill. 2d at 441. "To that end, terms utilized in the policy are accorded their plain and ordinary meaning. [Citation.] We will apply those terms as written unless such application contravenes public policy. [Citation.]" *Villicana*, 181 Ill. 2d at 441-42.

¶ 29                    II. Professional Services Exclusion

¶ 30    We turn now to the first issue raised by Stonegate in the instant appeal: was Smith rendering a "professional service" when the fire started at the Quigley residence? Section II, exclusion 1(d), of the homeowner's policy excludes coverage for property damage "[a]rising out of the rendering of or failure to render professional services." Though the homeowner's policy includes a section on definitions, "professional services" is not a defined term. It is therefore our task to determine whether Smith's work qualifies as a "professional service."

¶ 31    The trial court found that Smith's work at the Quigley residence did not constitute a professional service. In reaching this conclusion, the trial court surveyed the relevant case law to determine that the appropriate inquiry must focus on the nature of the conduct at issue when determining whether the exclusion applies. Here, the nature of the conduct on the day of the

fire was heating pipes with a torch in a bathroom wall. Focusing specifically on this, the trial court held that this conduct was not predominantly mental or intellectual but rather physical or manual in nature and concluded the exclusion does not apply. We agree with the trial court's analysis and conclusion.

¶ 32    " '[W]here an exclusionary clause is relied upon to deny coverage, its applicability must be clear and free from doubt because any doubts as to coverage will be resolved in favor of the insured.' " *Sentry Insurance v. Continental Casualty Co.*, 2017 IL App (1st) 161785, ¶ 38 (quoting *International Minerals & Chemical Corp. v. Liberty Mutual Insurance Co.*, 168 Ill. App. 3d 361, 367 (1988)). Moreover, "provisions that limit or exclude coverage will be interpreted liberally in favor of the insured and against the insurer." *American States Insurance Co. v. Koloms*, 177 Ill. 2d 473, 479 (1997). In interpreting "professional services" exclusions, courts have adopted an expansive understanding of that term. The term is not limited to services for which the person performing them must be licensed by a governmental authority; rather, "professional services" encompass any business activity conducted by the insured that involves specialized knowledge, labor, or skill, and is predominantly mental or intellectual as opposed to physical or manual in nature. *Sentry Insurance*, 2017 IL App (1st) 161785, ¶ 59; *State Street Bank & Trust Co. of Quincy, Illinois v. INA Insurance Co. of Illinois*, 207 Ill. App. 3d 961, 967 (1991).

¶ 33    In the case at bar, it was Smith's heating of the pipes specifically that caused the property damage Stonegate seeks to exclude from coverage. The inquiry is whether this activity, assuming it does require specialized knowledge, labor, or skill, is predominantly mental or intellectual as opposed to physical or manual in nature. Stonegate ignores the established standard and fails to assert that the activity at hand is predominantly mental or intellectual. Nor

could it make such an assertion. It would defy common sense to contend that using a flame to heat pipes is a predominantly mental or intellectual endeavor. To be clear, we do not hold that every type of work that could broadly be categorized as plumbing is *per se* outside the scope of "professional services"; rather, we take the narrower position that the particular activity of heating pipes with a torch is neither predominantly mental nor intellectual and, therefore, not a "professional service." In the case at bar, Smith was not a plumber and was to receive no money for his work, and as a result, the "professional services" exclusion does not apply here.

¶ 34                              III. Business Pursuits Exclusion

¶ 35        Having concluded that the professional services exclusion does not apply in the case at bar, we turn now to the question of whether the "business pursuits exclusion" absolves Stonegate of any liability. As an initial matter, we must note that there appears to be confusion on the part of Stonegate regarding which policy provision it wishes us to review. Citing section II, exclusion 1(b), of the homeowner's policy, Stonegate argues that, because Smith "was engaged in a business pursuit" when providing plumbing services, coverage is excluded. However, the term "business pursuit" does not appear in the language of that cited exclusion. The term "business pursuits" does appear in a different document—on page 64 of the homeowner's endorsement. Stonegate appears to conflate these two provisions. Nonetheless, we will read Stonegate's contention charitably and consider the applicability of the provision it specifically cites: exclusion 1(b).

¶ 36        Section II, exclusion 1(b), of the homeowner's policy excludes coverage for property damage "[a]rising out of or in connection with a 'business' engaged in by an 'insured.' This exclusion applies but is not limited to an act or omission, regardless of its nature or circumstance, involving a service or duty rendered, promised, owed, or implied to be provided

12

because of the nature of the 'business.' " According to the definitions section of the policy, " '[b]usiness' includes trade, profession or occupation."

¶ 37   As noted above, at the time that Smith was replacing the shower valve, he had been a carpenter (and not a plumber) for over 30 years. He had never been compensated for plumbing work, nor was he compensated in this case. Rather, he was doing a favor for a friend. To hold that such conduct constitutes a business or a "business pursuit" would be absurd. We construe contracts to avoid absurd results. *Suburban Auto Rebuilders, Inc. v. Associated Tile Dealers Warehouse, Inc.*, 388 Ill. App. 3d 81, 92 (2009). This exclusion does not apply to Smith's work in the case at bar.

¶ 38                              IV. Notice and Cooperation

¶ 39   We turn now to Stonegate's third argument: because Smith failed to provide notice to, and cooperate with, Stonegate regarding the fire, Stonegate is not required to provide coverage to Smith. Stonegate argues that notice and cooperation are conditions precedent to the enforcement of Smith's insurance policy. As noted above, the trial court considered these issues separately, ruling on cooperation in its May 7, 2021, decision and setting a separate briefing schedule on the notice issue. The court then granted summary judgment in favor of Allstate on the notice issue on July 23, 2021.

¶ 40   In support of its argument, Stonegate cites several provisions in the homeowner's policy. However, Stonegate does not indicate which provisions relate to notice and which provisions relate to cooperation. Rather, Stonegate lumps them together and cites broadly to "Section II— Conditions," paragraph 3, which reads as follows:

"*Duties After Loss.* In case of an accident or 'occurrence,' the insured will perform the following duties that apply. You will help us by seeing that these duties are performed:

a. Give written notice to us of our agent as soon as is practical, which sets forth:

(1) The identity of the policy and 'insured';

(2) Reasonably available information on the time, place and circumstances of the accident or 'occurrence'; and

(3) Names and addresses of any claimants and witnesses;

b. Promptly forward to us every notice, demand, summons, or other process relating to the accident or 'occurrence';

c. At our request, help us:

(1) To make settlement;

(2) To enforce any right of contribution or indemnity against any person or organization who may be liable to an 'Insured';

(3) With the conduct of suits and attend hearings and trials; and

(4) To secure and give evidence and obtain the attendance of witnesses;

d. Under the coverage—Damage to Property of Others—submit to us within 60 days after the loss, a sworn statement of loss and show the damaged property, if in the 'insured's' control;

e. The 'insured' will not, except at the 'insured's' own cost, voluntarily make payment, assume obligation or incur expense other than for first aid to others at the time of the 'bodily injury.' "

14

¶ 41        Stonegate further alleges that the above notice and cooperation requirements are conditions precedent to coverage, citing "Section II—Conditions," paragraph 6, which reads as follows:

> "*Suits Against Us.* No action can be brought against us unless there has been compliance with the policy provisions.
>
> No one will have the right to join us as a party to any action against an 'insured.' Also, no action with respect to Coverage E can be brought against us until the obligation of the 'insured' has been determined by final judgment or agreement signed by us."

¶ 42        Under Illinois law, notice and cooperation are considered under separate frameworks. We start with notice. "A policy condition requiring notice '[a]s soon as practicable' is interpreted to mean 'within a reasonable time.' " *Country Mutual Insurance Co. v. Livorsi Marine, Inc.*, 222 Ill. 2d 303, 311 (2006) (quoting *Barrington Consolidated High School v. American Insurance Co.*, 58 Ill. 2d 278, 281 (1974)). "Whether notice has been given within a reasonable time depends on the facts and circumstances of each case." *Country Mutual*, 222 Ill. 2d at 311-12 (citing *Barrington Consolidated High School*, 58 Ill. 2d at 282). Failing to give reasonable notice precludes the right of the insured party to recover under its policy with the insurance company. *Simmon v. Iowa Mutual Casualty Co.*, 3 Ill. 2d 318, 321-23 (1954). Our supreme court has found that the following factors may be considered in determining whether notice as given within a reasonable time: (1) the specific language of the policy's notice provision, (2) the insured's sophistication in commerce and insurance matters, (3) the insured's awareness of an event that may trigger insurance coverage, (4) the insured's diligence, and (5) prejudice to the insurer. *West American Insurance Co. v. Yorkville National Bank*, 238 Ill. 2d 177, 185-86 (2010) (citing *Country Mutual*, 222 Ill. 2d at 313).

¶ 43    In the case at bar, provision "a" under "duties after loss" (quoted above) sets forth notice requirements. It does not specify the exact period of time during which notice must be given; rather, it requires written notice "as soon as practical." As mentioned, our courts have determined that this phrase means within a "reasonable time." The record indicates that Stonegate received notice regarding the March 28, 2013, fire on April 25, 2013. It appears that it was not Smith who initially notified Stonegate. It was a representative of Travelers, the company with which the owner of a neighboring damaged unit maintained a policy, who notified Stonegate after the owner filed a claim.

¶ 44    It is irrelevant that notice was provided by Travelers rather than Smith. We do not read the policy language to require specifically the insured (Smith) to be the party giving notice. What is relevant is that notice was provided. Even so, based on the handwritten report of the Travelers representative from April 25, 2013, it appears that Smith did contact Stonegate on or about April 25, 2013: "Claimant made report but our insured didnt [*sic*] respond w/his info until Today [*sic*] 4-25-13." Based on this note, the veracity of which Stonegate does not dispute, it appears that Smith contacted Stonegate on April 25, 2013, with information regarding the fire.

¶ 45    As to the second factor, we do not find Smith to be sophisticated in matters of commerce and insurance. Smith is a carpenter. Though he may have incidentally dealt with matters of insurance in the course of his career, we cannot find Smith inherently possesses an intimate understanding of insurance coverage. As to the third factor, it does not appear Smith was aware that the fire damage could trigger Stonegate's coverage and indeed thought it would be "nuts" to assume that. Regarding the fourth factor, we cannot say that Smith was not diligent, as the

record indicates that he communicated with Stonegate on multiple occasions after the fire. Finally, as to the fifth factor, Stonegate has not shown that it suffered prejudice.

¶ 46      Based on the foregoing, we cannot say that notice provided within 30 days of the fire was not within a reasonable time. Accordingly, we do not find there has been a breach of the notice requirement.

¶ 47      We turn now to the issue of cooperation. "To establish a breach of the cooperation clause, the insurance company must show that it exercised a reasonable degree of diligence in seeking the insured's participation and the insured's failure to participate was due to a refusal to cooperate." *American Access Casualty Co. v. Alassouli*, 2015 IL App (1st) 141413, ¶ 17 (citing *Mazzuca v. Eatmon*, 45 Ill. App. 3d 929, 932 (1977)). In *Alassouli*, a representative from the insurance company attempted to contact the insured five times via phone; a private investigator visited the last known address of the insured; the investigator spoke to neighbors regarding the insured's whereabouts; the investigator learned about the insured's supposed new address and visited it to no avail; and both the representative and the investigator signed affidavits attesting to the foregoing. *Alassouli*, 2015 IL App (1st) 141413 ¶ 10. In *Mazzuca*, the insurance company (1) hired an investigator who visited the last known address and place of employment of the insured, (2) sent two letters to the insured, and (3) hired a second investigator to speak to relatives of the insured. *Mazzuca*, 45 Ill. App. 3d at 930-32.

¶ 48      In the case at bar, provisions "b" and "c" under "duties after loss" (quoted above) set forth cooperation requirements. However, before even considering the specifics of those provisions, we must determine whether Stonegate exercised a reasonable degree of diligence in seeking Smith's participation, as required by Illinois law. The record indicates that Stonegate sent only one letter to Smith before sending its denial letter. Moreover, the record shows that Smith was

17

described as cooperative by Stonegate's investigator during an interview about the fire. What Stonegate has done in seeking participation is far less than what the insurance companies in *Alassouli* and *Mazzuca* did, and their conduct was still not found to be reasonably diligent. Based on our precedent, we find that Stonegate did not exercise a reasonable degree of diligence in seeking Smith's participation, and therefore, Stonegate's breach of cooperation claim fails.

¶ 49    As Smith complied with the notice and cooperation requirements, Stonegate's coverage cannot be precluded on this basis.[3]

¶ 50                                  V. Scope of Coverage

¶ 51    In its fourth and final argument, Stonegate contends that the homeowner's policy's coverage does not extend to Smith's replacement of the shower valve at the Quigley residence that resulted in fire damage. Stonegate argues that it was neither the intent of Smith nor Stonegate that the homeowner's policy would cover liability outside of Smith's own residence. In support thereof, Stonegate cites Smith's deposition testimony, in which Smith stated that it would be "nuts" to assume that his homeowner's policy would extend to the damages resulting from the work he performed at the Quigley residence.

¶ 52    Stonegate's reliance on Smith's deposition is misplaced.

"Traditional contract interpretation principles in Illinois require that: '[a]n agreement, when reduced to writing, must be presumed to speak the intention of the parties who signed it. It speaks for itself, and the intention with which it was executed must be determined from the language used. It is not to be changed by extrinsic evidence.' " *Air Safety, Inc. v.*

---

[3]We need not address the applicability of paragraph 6, cited above, because we do not find that Smith breached the notice and cooperation provisions. Paragraph 6 is relevant only to the extent there has been a breach.

*Teachers Realty Corp.*, 185 Ill. 2d 457, 462 (1999) (quoting *Western Illinois Oil Co. v. Thompson*, 26 Ill. 2d 287, 291 (1962)).

¶ 53    In the case at bar, Smith's testimony cannot be considered because we have a detailed contract (homeowner's policy) between him and Stonegate that allows us to determine its scope. Section II of the policy provides for personal liability coverage:

"*Coverage E—Personal Liability*

If a claim is made or a suit it brought against an 'insured' for damages because of 'bodily injury' or 'property damage' caused by an 'occurrence' to which the coverage applies, we will:

1. Pay up to our limit liability for the damages for which the 'insured' is legally liable. Damages include prejudgment interest awarded against the 'insured'; and

2. Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when the amount we pay for damages resulting from the 'occurrence' equals our limit of liability."

¶ 54    On the very next page of the policy, a number of exclusions are enumerated. Of relevance here are three exclusions regarding which types of premises are not covered under personal liability:

"1. *Coverage E—Personal Liability* and *Coverage F—Medical Payments to Others* do not apply to 'bodily injury' or 'property damage'

* * *

e. Arising out of a premises:

(1) Owned by an 'insured';

(2) Rented to an 'insured'; or

(3) Rented to others by an 'insured';

that is not an 'insured location' ***."

¶ 55    If Stonegate had intended to exclude personal liability arising from an insured's negligence at another homeowner's property, it could have done so in writing here, as it did with the inclusion of the three explicit exceptions regarding which premises would not be covered. None of these exceptions applies in the present case. We decline to read additional exceptions into a contract to cure Stonegate's *post hoc* regret for having failed to draft language to accurately reflect its purported intent.

¶ 56                                    CONCLUSION

¶ 57    The trial court properly concluded that Allstate has shown there is no genuine dispute of material fact. Accordingly, it also properly granted summary judgment in favor of Allstate.

¶ 58    Affirmed.

2022 IL App (1st) 210931

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 2014-CH-5853; the Hon. Anna M. Loftus, Judge, presiding. |
| **Attorneys for Appellant:** | Samuel A. Shelist, of Shelist & Peña LLC, of Chicago, for appellant. |
| **Attorneys for Appellee:** | No brief filed for appellees. |